In re Martin E. KUEPPER, Debtor.

Gregory E. GUNTHER, Plaintiff,

v.

Martin E. KUEPPER, Defendant.

Bankruptcy No. 82–03414.

Adv. No. 82–1672.

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 2, 1983.

John C. Peterson, Robinson, Smith & Robinson, Appleton, Wis., for plaintiff.

Daniel E. Ensley, Menasha, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The issue before this Court is whether or not the claim of plaintiff Gregory E. Gunther (sic)[1] ("plaintiff") against defendant Martin E. Kuepper ("defendant") should be declared nondischargeable within the meaning of § 523(a)(6) of the Bankruptcy Code which states:

"A discharge under s. 727—of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by debtor to another entity or to the property of another entity—".

A trial was conducted on September 28, 1983.[2]

## FACTS

On Sunday evening, August 9, 1981, plaintiff was driving a 1979 Harley Davidson motorcycle and was proceeding north on State Trunk Highway 76 near Stephensville, Wisconsin. At approximately 10:50 P.M. on that evening, plaintiff was involved in a traffic collision with defendant who had been operating a 1981 Kawasaki motor-

1. The correct spelling of plaintiff's last name is "Guenther".

2. Before trial, the parties stipulated to a bifurcated trial, and that the only issue to be tried would be nondischargeability. In the event the Court made a finding that the claim of the plaintiff was nondischargeable, a second trial would thereafter be held on the issue of damages, with each party reserving the right to request a jury.

cycle and had been traveling south on State Trunk Highway 76. The collision occurred when defendant, while operating his motorcycle, crossed the center line and struck plaintiff's motorcycle, resulting in injuries to both parties and to Katherine Eisch (who subsequently married defendant and herein is referred to as "Mrs. Kuepper"). Mrs. Kuepper was a passenger riding on defendant's motorcycle at the time of this accident. It is undisputed that defendant had previously been drinking beer, although the amount consumed varied depending upon the testimony of the witnesses. Blood tests were taken of the defendant at St. Elizabeth Hospital following the accident and revealed a blood alcohol level of .1%.[3]

Requests for admissions were submitted by plaintiff's attorney to defendant's attorney, but were unanswered. Accordingly, pursuant to Rule 36 of the Federal Rules of Civil Procedure, each matter of which admissions were requested is deemed admitted for purposes of this trial. Included among these admissions are the following: (1) "At the time of this accident, defendant's ability to operate his motorcycle had been affected by his consumption of intoxicants"; and (2) "Defendant had crossed the center line of said highway, striking plaintiff's motorcycle without any excuse for crossing said center line except his own intoxication."

The testimony revealed that, before the accident, defendant and Mrs. Kuepper attended a church picnic at Stephensville picnic grounds from approximately 4:30 P.M. to approximately 10:30 P.M. where they drank some beer. Around 10:30 P.M., defendant and Mrs. Kuepper left the picnic grounds and were proceeding to Mrs. Kuepper's home.

Mrs. Kuepper testified that she had observed defendant's motorcycle veering to the left across the center line just before the collision. She could not explain why this occurred. She also stated that defendant had previously consumed about six to eight beers, but displayed no signs of intoxication such as slurring of speech, stumbling

or wild or reckless behavior. She also testified that his motorcycle was traveling at a speed of 35 to 40 miles per hour at the time of the collision.

Defendant was knocked unconscious as a result of the impact and stated that he could not recall how this accident occurred. He remembered drinking "more than one beer and possibly up to as many as three". His last recollection before the accident was getting onto his motorcycle, and the next thing he remembered was being in the hospital after the accident.

Plaintiff testified that at the time of the accident he was traveling approximately 55 miles per hour, which was the speed limit. He did not recall how fast defendant's motorcycle was traveling. Plaintiff also stated that he had no warning before defendant's motorcycle crossed the center line.

Kevin Quinn, ("Mr. Quinn"), a friend of plaintiff had been riding on another motorcycle side by side with plaintiff at the time of the accident. He stated he did not observe any erratic driving by defendant before the accident. Mr. Quinn further testified he saw defendant cross the center line just before the accident and swerve toward plaintiff, but he did not know why this occurred. He also stated that defendant "lost control of his motorcycle" and, in another portion of his testimony, testified that defendant "deliberately" crossed the center line.

The accident report revealed that both motorcycles were proceeding approximately 55 miles per hour at the time of this accident.

## LAW

Plaintiff asserts that the manner in which the defendant had been proceeding was so reckless that it should be equated with "willful and malicious" conduct within the meaning of § 523(a)(6). Plaintiff further states that the legislative history of this particular statute indicated "displeasure among a small minority of the Congress

---

**3.** Under Wisconsin law, it is unlawful for a person with a blood alcohol level of .1% or more to operate a motor vehicle. Sec. 346.63 Wis.Stats. (1981–1982).

with the Court's interpretation in the case of *Tinker v. Colwell* and that this legislative history is insufficient authority to change longstanding opinions which followed *Tinker v. Colwell.*" The frequently quoted legislative history which plaintiff referred to reads as follows:

"Paragraph 6 excepts debts for willful and malicious injury by debtor to another person or the property of another person. Under this paragraph 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 49 L.Ed. 754 (1902 [1904]) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled."

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362–365 (1977), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6320.

This Court is not persuaded from the record that the facts in the case at bar warrant a conclusion that defendant's conduct rose to the level of "reckless disregard". But, *arguendo,* even if such conduct could be construed as "reckless disregard" it was not "willful" conduct within the import and intent of § 523(a)(6).[4] This Court does not believe it appropriate to reject the legislative history of § 523(a)(6), which has been cited in numerous decisions involving claims against intoxicated debtor-drivers. The majority of these decisions which have considered this legislative history have held that such claims are dischargeable. *See, In re Naser,* 7 B.R. 116 (Bkrtcy.W.D.Wis.1980); *In re Morgan,* 22 B.R. 38 (Bkrtcy.D.Neb. 1982); *In re Bratcher,* 20 B.R. 547 (Bkrtcy. W.D.Okl.1982); *In re Maney,* 23 B.R. 61 (Bkrtcy.W.D.Okl.1982); *In re Davis,* 26 B.R. 580 (Bkrtcy.D.R.I.1982); *In re Bryson,* 3 B.R. 593 (Bkrtcy.N.D.Ill.1980); *In re Ankowiak,* 9 B.R. 746 (Bkrtcy.N.D.Ill.1981); *In re Silas,* 24 B.R. 771 (Bkrtcy.N.D.Ala.W.D. 1982). *See also,* Cowans, *Bankruptcy Law*

*and Practice,* § 6.56 (Interim Ed.1983) which asserts:

"Under the Code, the reckless driver will be discharged."

*In re Grace,* 22 B.R. 653 (Bkrtcy.E.D.Wis. 1982), while not a case involving an intoxicated debtor-driver, is pertinent with respect to interpreting § 523(a)(6). In *Grace,* this Court concluded that the pre-Code *Tinker v. Colwell* common law definition for "willful" (namely, reckless disregard) established a looser standard and had been overruled by the Code which now requires a more stringent standard of deliberate or intentional wrongdoing. For the defendant's conduct in the instant case to have been "willful", it must be established that defendant deliberately drove his motorcycle across the center line for the purpose of striking plaintiff's motorcycle. The evidence is ample to support a finding that defendant's drinking was a contributing factor to his actions in crossing the center line. Indeed, by virtue of the admissions under Rule 36 of the Federal Rules of Civil Procedure, the Court must accept as a finding that defendant crossed the center line of the highway without any excuse other than his own intoxication. Nevertheless, such finding does not mean that the defendant's conduct was necessarily willful. It is true that one witness, Mr. Quinn, labeled defendant's conduct in crossing the center line as "deliberate". However this was a conclusion on his part. In another portion of his testimony, Mr. Quinn stated defendant had "lost control of his motorcycle" in crossing the center line which appears to contradict his own statement that such action had been "deliberate". Furthermore, it is inconceivable that defendant would act in a deliberate manner for the purpose of causing injuries not only to plaintiff, but also to himself and to Mrs. Kuepper.

■ The Court recognizes that there is legislation pending before Congress to amend the Code to declare drunk driving debts nondischargeable. *See, Proposed Om-*

---

4. Because this Court reaches the conclusion that such conduct was not "willful", it is not necessary to address the separate element of

"malicious" conduct which is also a pre-requisite to a finding of nondischargeability under § 523(a)(6).

*nibus Bankruptcy Improvements Act of 1983*, (S. 445), S.Rept. 98–65, 98th Cong., 1st Sess. (1983) at page 43:

"Under present law, a debt that is the result of a tortious act—such as a judgment against the debtor as a result of an automobile accident—is nondischargeable only if the debt is the result of a 'willful and malicious' injury to the property or person of another.

In most states, an injury resulting from an act of drunk driving will support a finding only of negligence on the part of the driver. Thus, more often than not, the debt is discharged—unless the bankruptcy court finds that the act of drunk driving was a willful and malicious act by the nature of the circumstances surrounding it."

However, as this Court pointed out in *In re Hoppa*, 31 B.R. 753, (Bkrtcy.E.D.Wis.1983), if the law is to be changed, it is for Congress, and not for this Court to do so. Where Congress has clearly indicated its intention, this Court must abide by it. *In re Bryson, supra, In re Silas, supra.*

 There may be circumstances of a more egregious nature to support a finding that a claim involving an intoxicated debtor-driver should be declared nondischargeable even under the existing Code. However, negligent driving by one who also happens to be intoxicated does not always create willful and malicious conduct. It is a matter of how aggravated the particular facts are. When deciding what constitutes willful and malicious conduct, a Court must take into consideration the unique facts of the case before it, and no two cases present identical facts. *In re Cloutier*, 33 B.R. 18 (Bkrtcy.D.Me.1983). The evidence in the case at bar does not warrant a holding of nondischargeability and involves matters of negligence only.

There is authority to support the proposition that voluntary drinking on the part of a debtor-driver constitutes an intentional act sufficient to justify a conclusion that such injury caused by the defendant is willful and malicious. *In re Greenwell*, 21 B.R. 419 (D.C.S.D.Ohio 1982). However, this Court would not inflexibly apply this rule. Instead, it prefers to weigh all of the factors involved on a case by case basis.

Accordingly, plaintiff's complaint shall be dismissed without costs. This decision shall stand as and for findings of fact and conclusions of law in accordance with Rule 752 of the Federal Rules of Bankruptcy Procedure.