REINHARDT, Circuit Judge:
 

 Appellant Robert Adams appeals the district court’s determination that his debt to appellee Betty Moraes is nondischargeable in bankruptcy. We affirm.
 

 I. FACTUAL BACKGROUND
 

 At approximately 1:25 a.m. on January 30, 1979, a pickup truck driven by Adams collided with a car driven by Moraes. At the time of the collision, Adams was traveling west on an eastbound lane of California Interstate 8, and Moraes was traveling east. Adams had been drinking for several hours prior to the collision. When the collision occurred, Adams’ blood alcohol content was .15
 
 per cent.
 
 Subsequent to the collision, Adams pleaded guilty to a state charge that he was driving while under the influence of alcohol.
 

 On November 5, 1979, Moraes filed suit against Adams in California Superior Court, San Diego County, to recover damages for injuries she had sustained as a result of the collision. On or about November 12, 1982, prior to the termination of Moraes state court action, Adams filed for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Act, 11 U.S.C. §§ 701-728 (1982). The state court proceedings were stayed pending resolution of Adams’ bankruptcy petition. On February 2, 1983, Mor-aes filed an adversary complaint in United States Bankruptcy Court. Moraes alleged that Adams was liable for the injuries she had sustained in the collision and that Adams’ resulting debt to Moraes was nondis-chargeable in bankruptcy. The district court withdrew the matter from the bankruptcy court and assumed original jurisdiction.
 
 [1]
 

 
 *1424
 
 The district court bifurcated the proceedings. It first conducted a jury trial on the issues of liability and damages, in which Adams was found liable for general damages in the amount of $258,000 and for punitive damages in the amount of $75,000. The district court then conducted a bench trial on the issue of dischargeability, concluding that Adams’ debt was nondis-chargeable. Judgment was entered in May of 1984.
 

 In this appeal, Adams challenges (1) the district court’s jurisdiction to determine dis-chargeability; (2) the legal standard applied by the district court in reaching its determination of nondischargeability; and (3) the district court’s conclusion that its finding of nondischargeability applied to both compensatory and punitive damages.
 
 [2]
 

 II. APPELLANT’S JURISDICTIONAL CHALLENGE
 

 Appellant contends that jurisdiction to determine the issue of dischargeability rests exclusively with the bankruptcy court. Accordingly, appellant contends that the district court erred in assuming jurisdiction over the issue rather than allowing it to remain in the bankruptcy court. We review determinations of subject matter jurisdiction
 
 de novo. See Clayton v. Republic Airlines, Inc.,
 
 716 F.2d 729, 730 (9th Cir.1983).
 

 An examination of the relevant jurisdictional statute demonstrates that Adams’ contention is meritless. Enacted as part of the 1978 Bankruptcy Reform Act, 28 U.S.C. § 1471 (1982),
 
 amended by
 
 28 U.S.C. § 1334 (Supp.1985), originally provided, in relevant part, as follows:
 

 (a)Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 

 In
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court invalidated the trial court jurisdiction of bankruptcy judges provided by subsection (c).
 
 In re Burley,
 
 738 F.2d 981, 984 (9th Cir.1984).
 
 Northern Pipeline
 
 did not, however, diminish the jurisdiction of the district courts. Thus, at the time the district court conducted the proceedings at issue in this case, subsections (a) and (b) were valid, and the district court had original jurisdiction in all cases under Title 11.
 
 See White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254, 259-60 (6th Cir.1983).
 

 Notwithstanding this clear statutory grant of original jurisdiction, Adams contends that a determination of dischargeability must be made in the first instance by the bankruptcy court. However, Adams’ contention conflicts with an Emergency Rule which was issued by the Judicial Conference of the United States subsequent to
 
 Northern Pipeline
 
 and which was adopted, with minor variations, by all the district courts in the Ninth Circuit.
 
 See In re Burley,
 
 738 F.2d at 984 n. 2. The Rule, which was adopted on January 10,1983 and
 
 *1425
 
 which has since been superseded by the 1984 Bankruptcy Amendments and Federal Judgeship Act, authorized direct reference to a bankruptcy judge of “[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11” General Order No. 279-B(e)(l) (S.D.Cal.1983) (as amended). The Rule also prescribed the manner in which the district court might withdraw reference of a matter which had been referred, by virtue of the Rule, to a bankruptcy judge. The Rule provided that
 

 The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party_ If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise.
 

 Id.
 
 279-B(c)(2). Thus, pursuant to the Emergency Rule, the district court had explicit authority to revoke referral of any matter to the bankruptcy court on its own motion.
 

 Here, it is apparent from the record that although Adams’ petition and Moraes’ adversary complaint had been filed in bankruptcy court, the district court, upon its own motion, properly withdrew reference of the dischargeability issue along with its mandatory withdrawal of the liability issue.
 
 [3]
 
 In the absence of any statutory duty to defer to the bankruptcy court on the issue of dischargeability, and in light of the clear direction provided by 28 U.S.C. § 1471 (1982), we conclude that the issue of dischargeability was properly before the district court.
 

 III. APPELLANT’S CHALLENGE TO THE DISTRICT COURT’S DETERMINATION OF NONDISCHARGE-ABILITY
 

 11 U.S.C. § 523(a)(6) (1982) provides as follows:
 

 (а) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt — ... (б) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 

 In finding Adams’ debt to Moraes nondis-chargeable, the district court concluded that the terms “willful” and “malicious” meant only “the intentional doing of a wrongful act with knowledge of its probable consequences.” The court further concluded that Adams need not have specifically intended to injure Moraes in order for it to find his conduct willful and malicious. Relying on evidence that Adams had previously been involved in accidents as a result of drunk driving, the district court concluded that Adams had intentionally driven while drunk with knowledge that injury would probably result. Accordingly, the district court held that Adams’ debt to Mor-aes was nondischargeable.
 

 Appellant contends that in determining that his conduct was willful and malicious, the district court applied an erroneous legal standard. Appellant argues that the requirements of willfulness and malice may only be satisfied by a showing that he specifically intended to injure Moraes.
 

 At the time of the district court’s ruling, courts were in disagreement as to whether driving while intoxicated, without more, constituted conduct sufficiently willful and malicious to warrant a finding of nondischargeability.
 
 Compare In re Morgan,
 
 22 B.R. 38, 39 (Bankr.D.Neb.1982) (liabilities incurred as a result of drunk driving held
 
 *1426
 
 dischargeable in the absence of any evidence that judgment-debtor intended to injure anyone);
 
 In
 
 re
 
 Maney,
 
 23 B.R. 61, 62 (Bankr.W.D.Ok.1982) (“driving while intoxicated does not as a matter of intent create a nondischargeable debt”);
 
 In re Naser,
 
 7 B.R. 116, 118 (Bankr.W.D.Wis.1980) (section 523(a)(6) requires an intent to injure someone);
 
 In re Bryson,
 
 3 B.R. 593, 596 (N.D.Ill.1980) (same)
 
 with In re Greenwell,
 
 21 B.R. 419, 421 (Bankr.S.D.Ohio 1982) (liabilities incurred as a result of drunk driving held nondischargeable because “the voluntary drinking ... constituted an intentional act sufficient to support the conclusion that the injury caused by the defendant was willful and malicious”);
 
 In re Callaway,
 
 41 B.R. 341, 346 (Bankr.E.D.Penn.1984) (same);
 
 In re Wooten,
 
 30 B.R. 357, 358 (Bankr.N.D.Ala.1983) (same);
 
 In re Cloutier,
 
 33 B.R. 18, 20 (Bankr.D.Me.1983) (debt resulting from driving while intoxicated held nondischargeable because substantial certainty of injury resulting from judgment-debtor’s drinking gave rise to inference of intent to injure).
 

 The legislative history underlying section 523(a)(6) made it clear that conduct which was merely reckless did not rise to the level of “willful and malicious.”
 
 See
 
 H.R. Rep. No. 595, 95th Cong., 1st Sess. 365,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6320-21 (“Under [§ 523(a)(6)], ‘willful’ means deliberate or intentional. To the extent that
 
 Tinker v. Colwell,
 
 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), held that a looser standard is intended, and to the extent that other cases have relied on
 
 Tinker
 
 to apply a ‘reckless disregard’ standard, they are overruled.”) (footnote omitted). However, the legislative history shed no light on the specificity of the intent which a judgment creditor was required to show in order to obtain a finding of nondischargeability under section 523(a)(6).
 

 Whether driving while intoxicated — with or without knowledge of the probable consequences — constitutes conduct that is “willful” and “malicious” would present a close question if we were limited in our interpretation of section 523(a)(6) to the language of that subsection and the legislative history in existence at the time the matter was decided in the district court. However, two months after judgment was entered Congress answered the question in the form of an amendment to Title 11. In July of 1984, Congress enacted 11 U.S.C. § 523(a)(9) which, in our view, prescribes the manner in which we must construe section 523(a)(6).
 
 See May Department Stores Co. v. Smith,
 
 572 F.2d 1275, 1278 (8th Cir.) (per curiam)
 
 cert. denied,
 
 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978) (subsequent amendment and its legislative history, though not controlling, is nonetheless entitled to substantial weight in construing the earlier law). Section 523(a)(9) provides explicitly that debts arising from liabilities incurred as a result of drunk driving are nondischargeable.
 
 [4]
 
 The legislative history underlying the 1984 amendment makes it clear that by enacting the amendment, Congress intended to clarify pre-existing law. In describing the various Bankruptcy Code amendments that were being adopted, the Chairman of the House Committee of the Judiciary stated that “[section 523(a)(9)] clarifies present law relating to the nondischargeability of debts incurred by drunk drivers. Debts incurred by persons driving while intoxicated are presumed to be willfully and maliciously incurred under this provision.” 130 Cong.Rec. H7489 (daily ed. June 29, 1984) (statement of Rep. Rodino),
 
 reprinted in
 
 6 1984 U.S.Code Cong. & Ad.News 576, 577.
 

 In addition to the expression of Congressional intent underlying section 523(a)(9),
 
 *1427
 
 we are influenced by the fact that at the time that amendment was enacted there was a clear conflict among the
 
 nisi prius
 
 courts, in this case the bankruptcy courts, over the meaning of section 523(a)(6).
 
 See
 
 pp. 1425-1426,
 
 supra.
 
 With respect to statutory construction, we view conflict among courts as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law.
 
 Callejas v. McMahon,
 
 750 F.2d 729, 731 (9th Cir.1984).
 
 See also Brown v. Marquette Savings and Loan Association,
 
 686 F.2d 608, 615 (7th Cir.1982) (“One method of interpreting the significance of subsequent amendments to a statute takes dispute or ambiguity, such as a split in the circuits, to be an indication that a subsequent amendment is intended to clarify, rather than change, the existing law.”);
 
 United States v. Tapert,
 
 625 F.2d 111, 121 (6th Cir.),
 
 cert. denied
 
 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216
 
 and
 
 449 U.S. 1034, 101 S.Ct. 610, 66 L.Ed.2d 496 (1980) (“An amendment to an existing statute is not an acknowl-edgement by Congress that the original statute is invalid. It is a common and customary legislative procedure to enact amendments strengthening and clarifying existing laws.”); C. Sands,
 
 Sutherland Statutory Construction
 
 § 49.11, at 414-15 (N. Singer 4th ed. 1984). Accordingly, we construe section 523(a)(6) in light of the clarification of congressional intent provided by section 523(a)(9).
 

 In light of the clear expression of Congressional intent underlying section 523(a)(9), and in light of the conflict among bankruptcy courts that existed at the time that subsection was enacted, we view section 523(a)(9) as a clarification of section 523(a)(6). Accordingly, we hold that the voluntary acts of drinking and driving while intoxicated constitute conduct sufficiently intentional to support a finding of willfulness and malice, as contemplated by section 523(a)(6) and that this interpretation must be given retroactive application.
 
 See, e.g., Callejas v. McMahon,
 
 750 F.2d at 731;
 
 Brown v. Marquette Savings and Loan Association,
 
 686 F.2d at 615. Therefore, debts arising from liabilities which are incurred as a result of drunk driving, whether such conduct occurred before or after enactment of the 1984 amendment, are non-dischargeable. Here, the finding that Adams had voluntarily been drinking and subsequently drove while intoxicated is unchallenged. Accordingly, we conclude that the district court’s decision on the issue of non-dischargeability was correct.
 
 [5]
 

 IV. THE SCOPE OF DISCHARGEABILITY
 

 Finally, appellant contends that regardless of the legal standard applied to the determination of dischargeability, only punitive damages may be found to be non-dischargeable. Appellant argues that since punitive damages are designed to punish a wrongdoer for conduct which is intentional, willful and malicious, a finding of nondis-chargeability must necessarily be limited to debts arising from awards of punitive damages. We disagree.
 

 In
 
 Coen v. Zick,
 
 458 F.2d 326 (9th Cir.1972), we addressed the scope of discharge-ability pursuant to 11 U.S.C. § 35(a)(8) (1976), the precursor to section 523(a)(6) (1982).
 
 [6]
 
 We concluded that the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability. We held:
 

 The statutory exception which measures nondischargeability is
 
 “...
 
 for liabilities
 
 *1428
 
 ... for willful or malicious injuries to the person or property of another....” The exception is measured by the nature of the act,
 
 i.e.,
 
 whether it was one which caused willful and malicious injuries.
 
 All liabilities resulting therefrom are nondischargeable.
 
 One liability is limited to actual compensation.... But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as “liabilities” for “willful or malicious injuries to the person or property of another.”
 

 Id.
 
 at 329-30 (emphasis added).
 

 There is no evidence in the legislative history underlying either section 523(a)(6) or section 523(a)(9) that suggests that Congress intended to limit the scope of nondis-chargeability to punitive damages. We therefore see no reason to depart from the rule articulated in
 
 Coen.
 
 Accordingly, we conclude that both compensatory and punitive damages are subject to findings of nondischargeability pursuant to sections 523(a)(6) and 523(a)(9).
 

 AFFIRMED.
 

 [1]
 

 . Moraes’ complaint was originally filed in bankruptcy court pursuant to General Order No. 279-B (amended) (S.D.Cal.1983), which,
 
 inter alia,
 
 authorized direct reference to a bank
 
 *1424
 
 ruptcy judge of all civil proceedings related to cases under Title 11. The Rule also provided that the district court could withdraw such reference at any time upon its own motion, as was the case here.
 
 See
 
 text,
 
 infra
 
 at p. 1424-25.
 

 [2]
 

 . Adams also appeals the district court’s decision to admit evidence of his prior arrests for drunk driving during the dischargeability phase of the proceedings. Although Adams’ prior arrests may have been relevant to the standard of dischargeability applied by the district court, they are entirely irrelevant to the standard which we articulate today. Under the proper standard, the record in this case, wholly apart from any evidence regarding prior conduct, clearly requires a finding of nondischargeability. Therefore, we need not address this particular contention.
 

 [3]
 

 . We note that subsequent to
 
 Northern Pipeline,
 
 the bankruptcy court lacked jurisdiction to conduct a jury trial on the issue of liability.
 
 See In re Burley,
 
 738 F.2d at 984. The district court was therefore required to withdraw reference of the liability issue. Because the same evidence was applicable to the determinations of liability and dischargeability, and the district court, unlike the bankruptcy court, had jurisdiction to determine both issues, the interests of convenience and judicial economy were advanced by the district court's decision to conduct both proceedings.
 

 [4]
 

 . 11 U.S.C. § 523(a)(9) (Supp.1985) provides:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt — ... (9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debt- or as a result of the debtor’s operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred.
 

 [5]
 

 . We note that the standard applied by the district court required proof that the defendant had knowledge of the probable consequences of drinking and driving. Pursuant to our holding, proof of such knowledge is not necessary in order to show willfulness and malice. Nevertheless, since the result reached by the district court was correct, we affirm, even though the standard applied by the district court was more stringent than that which we articulate today.
 
 See Keniston v. Roberts,
 
 717 F.2d 1295, 1300 n. 3 (9th Cir.1983).
 

 [6]
 

 . 11 U.S.C. § 35(a)(8) (1976), repealed by 11 U.S.C. 523(a)(6) (1982), provided, in relevant part, that “[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts ... except such as ... are liabilities for wilfull and malicious injuries to the person or property of another....”