**Stephen Michael CASSIDY, Appellee,**

v.

**Thomas Francis MINIHAN, Appellant.**

**No. 84–4422–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

June 18, 1985.

---

948

Ed Dougherty, Kansas City, Mo., for appellee.

Thomas J. Downey, Jefferson City, Mo., for appellant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

The central issue in this bankruptcy appeal reads like a textbook hypothetical:[1] whether a judgment for personal injury damages resulting from the debtor's operation of an automobile while under the influence of alcohol is a debt for a "willful and malicious injury" and, therefore, nondischargeable under 11 U.S.C. § 523(a)(6). The Bankruptcy Court ruled that the judgment resulting from the debtor's drunk driving was not dischargeable. For the reasons set forth below, the Bankruptcy Court's decision will be reversed.

### I. Background

On the evening of October 24, 1979, Thomas Minihan, the debtor herein, drank at least five beers with some friends. Around midnight, he started for home. Minihan was driving north on Missouri State Highway 291. Stephen Cassidy, the creditor herein, was travelling south on the same highway. At approximately 12:40 a.m. on October 25, 1979, Minihan's car crossed the center line and collided head-on with Cassidy's vehicle. The particular stretch of road where the collision occurred had only two lanes as a result of road construction.

Both men were taken to the hospital. Some time in the next four hours, a blood sample was taken from Minihan. A test performed at 4:30 a.m. indicated that the debtor's blood sample contained .076 percent alcohol. Although the police officer who arrived at the scene of the accident noted that Minihan smelled of alcohol, a breathalyzer test was not performed.

Cassidy sustained a number of extremely serious injuries. In 1980, Cassidy sued

---

1. *See* D. Epstein & J. Landers, *Debtors and Creditors* 613, problem 3 (2d ed. 1982).

Minihan in Missouri state court. Minihan failed to appear for trial. The state trial judge entered a judgment of $853,000.00 for actual damages and $100,000.00 for punitive damages in favor of Cassidy and against Minihan. The debtor sought relief from this judgment debt by filing a voluntary Chapter 7 petition. On November 8, 1983, the creditor filed a complaint to determine dischargeability with respect to the judgment debt.

After conducting a hearing, the Bankruptcy Court found that the debtor was "legally drunk" at the time of the collision. The Bankruptcy Judge also ruled that the judgment debt in favor of Cassidy represented damages for a "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6). In reaching this conclusion, the Bankruptcy Judge noted that "willful" means deliberate or intentional, and then commented that Minihan's intent was demonstrated by his "voluntary ingestion of alcoholic beverages because 'intentional drinking unleashed the unbroken causative chain which led to the injury.'" Bankruptcy Court's Memorandum Opinion and Order of August 30, 1984, at 7 (quoting *In re Greenwell,* 21 B.R. 419, 421 (S.D.Ohio 1982)). Accordingly, the Bankruptcy Court held that the judgment debt was not dischargeable. The debtor appeals from this decision and asserts two primary points of error: (1) that there was insufficient evidence to support a finding that the debtor was "legally drunk" at the time of the collision; and (2) that, even if the debtor was drunk at the time of collision, injuries caused by a drunk driver are not, without more, "willful and malicious" within the meaning of § 523(a)(6).

## II. *Standard of Review*

■ This case is deemed to have been referred from this Court to the Bankruptcy Judge pursuant to an order entered by the United States District Court for the Western District of Missouri which adopted an Emergency Resolution to provide for the administration of the bankruptcy system.[2] The resolution provides for *de novo* review of the Bankruptcy Court's findings of fact and conclusions of law. Emergency Resolution (c)(5)(B). Since the present matter was not decided by the Bankruptcy Court until August 30, 1984, the decision below was rendered subject to the emergency rule. *See* Emergency Rule (d). In addition, the Court notes that its disposition of this appeal would remain unchanged even if a "clearly erroneous" standard of review was applied. *Cf.* 1 Collier on Bankruptcy ¶ 3.03[7].

## III. *Discussion*

The debtor first challenges the sufficiency of the evidence to support the Bankruptcy Court's finding that he was "legally drunk" at the time of the collision.[3] This

2. The Emergency Resolution was promulgated in the wake of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in order to ensure that the bankruptcy system fits within the constitutional contours of Article III of the United States Constitution.

3. The debtor challenges the Bankruptcy Court's finding that he was "legally drunk" at the time of the collision with a three-step argument. First, the debtor points out that the Bankruptcy Court relied heavily on the results of a blood test performed approximately four hours after the collision in concluding that the debtor was intoxicated at the time of the collision. The blood test revealed a blood alcohol level of .076 percent. Taking judicial notice of the oxidation rate of alcohol in the bloodstream, the Bankruptcy Court reasoned that the debtor's blood alcohol level at the time of the collision was in the .126–.15 percent range. Next, the debtor notes that the Bankruptcy Court's deduction was accurate only if the blood sample was taken from the debtor immediately before the test was performed at 4:30 a.m. In fact, the time at which the blood sample was taken does not appear in the lab technician's report. Consequently, the debtor contends, there was insufficient evidence to support the conclusion that his blood alcohol level at the time of the collision was in excess of the legal limit of .10 percent. For example, if the blood sample was taken shortly after the collision, the .076 percent reading would indicate that the debtor's blood alcohol level was below the legal limit at the critical time. Thus, the debtor persuasively submits that there was insufficient evidence to support the Bankruptcy Court's finding. *Cf. State v. Powell,* 618 S.W.2d 47, 49 (Mo.Ct.App.1981); *City of Trenton v. Lawrence,* 548 S.W.2d 278 (Mo.Ct.App.1977); Mo.Rev.Stat. § 577.037.5

Court finds it unnecessary to address that issue. Instead, this Court believes that the debt at issue is dischargeable even if it was the result of the debtor's operation of his automobile while intoxicated.

The crucial inquiry is whether a drunk driving debt is a debt for a "willful and malicious" injury within the meaning of § 523(a)(6). There are a number of courts which have addressed this question. A majority of them have held that drunk driving debts are dischargeable.[4] The minority has held to the contrary.[5] Because the dispute centers on the meaning of the words "willful and malicious" as used in the statute, the essential task of this Court is to ascertain congressional intent.

Before the Bankruptcy Code was amended in 1978, some courts had relief on *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), for the proposition that an injury is "willful and malicious" and therefore nondischargeable where the debtor's conduct evidenced only "reckless disregard" for the rights of others. As demonstrated by the legislative history, Congress meant to overrule this "reckless disregard" standard when it enacted § 523(a)(6) in 1978. In addition, Congress expressly indicated that "willful" means "deliberate or intentional" for § 523(a)(6) purposes. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), *reprinted in*

1978 U.S. Code Cong. & Admin. News 5787, 6320. Thus, in order for a debt to be nondischargeable under § 523(a)(6), Congress intended to require that the underlying injury was inflicted with something more than gross negligence. *See, e.g., In re Hostetler*, 44 B.R. at 888; *In re Granberg*, 39 B.R. at 689; *In re Davis*, 26 B.R. at 581–82.

■■■■ Keeping in mind that the word "willful" as used in § 523(a)(6) means "deliberate or intentional," the Court now turns to the Bankruptcy Judge's opinion. The Bankruptcy Judge reasoned that the requisite intent was evidenced in the instant case "by Minihan's voluntary ingestion of alcoholic beverages because 'intentional drinking unleashed the unbroken causative chain which led to the injury.'" While this analysis may have achieved a desirable result, this Court finds that the Bankruptcy Court's underlying definition of "willfulness" does not reflect the meaning assigned to that term by the 95th Congress.[6] There is no suggestion herein that Minihan intentionally drove his car across the center line nor that he intended to engage in a head-on collision with another vehicle.[7] Instead, the debtor's conduct reflected, at most, reckless disregard. This level of conduct is insufficient to warrant the conclusion that the debt at issue relates to a "willful and malicious" injury within

(1983) (physical evidence may support conviction for DWI even though defendant's blood alcohol level was less than .10 percent).

**4.** *See In re Hostetler*, 44 B.R. 886 (Bankr.M.D. Fla.1984); *In re Granberg*, 39 B.R. 687 (Bankr. N.D.Ill.1984); *In re Kuepper*, 36 B.R. 680 (Bankr.E.D.Wis.1983); *In re Davis*, 26 B.R. 580 (B.R.D.R.I.1983); *In re Silas*, 24 B.R. 771 (Bankr.N.D.Ala.1982); *In re Oakes*, 24 B.R. 766 (Bankr.N.D.Ohio 1982); *In re Maney*, 23 B.R. 61 (Bankr.W.D.Okla.1982); *In re Morgan*, 22 B.R. 38 (Bankr.D.Neb.1982); *In re Bratcher*, 20 B.R. 547 (Bankr.W.D.Okla.1982); *In re Brown*, 18 B.R. 591 (Bankr.N.D.Ala.1982); *In re Naser*, 7 B.R. 116 (Bankr.W.D.Wis.1980); *In re Bryson*, 3 B.R. 593 (Bankr.N.D.Ill.1980).

**5.** *In re Callaway*, 41 B.R. 341 (Bankr.E.D.Pa. 1984); *In re Galvan*, 39 B.R. 663 (D.Colo.1984); *In re Carey*, 35 B.R. 894 (Bankr.E.D.Tenn.1983);

*In re Cloutier*, 33 B.R. 18 (Bankr.D.Me.1983); *In re Wooten*, 30 B.R. 357 (Bankr.N.D.Ala.1983).

**6.** Under the Bankruptcy Court's reasoning, a debtor who tossed a banana peel onto his sidewalk on Tuesday would be unable to discharge a debt owed to the Fuller Brush salesman who slipped on the peel and fell on Wednesday, because the tossing of the peel was a voluntary act which "unleashed an unbroken causative chain which led to the injury."

**7.** *See In re Brachter*, 20 B.R. at 549 (absent evidence that debtor deliberately drove into creditors' car, injuries caused by collision were not "willful"); *In re Brown*, 18 B.R. at 593 (same); *Cf. In re Jones*, 27 B.R. 374, 375–76 (Bankr.S.D.Ohio 1983) (debt arising out of altercation when debtor rammed his vehicle into another vehicle was nondischargeable).

the meaning of § 523(a)(6).[8]  Therefore, the resulting debt clearly was dischargeable.

Accordingly, it is hereby

ORDERED that the Bankruptcy Court's order of August 30, 1984, holding appellant Minihan's debt to appellee Cassidy nondischargeable, is reversed.  It is further

ORDERED that appellee Cassidy's complaint to determine dischargeability is denied.

**8.**  It bears emphasis that this Court's holding is mandated by the legislative history underlying the enactment of § 523(a)(6).  In reaching its decision, the Bankruptcy Court apparently felt compelled by the equities of the case; for example, the Bankruptcy Court stated: "Hiding behind the laws of the Bankruptcy Code to discharge such an egregious act is unconscionable to this Court."  While I would readily agree that the existence of a loophole for drunk driving debts was undesirable, it is for Congress to change the law, not the courts.  *See In re Kuepper*, 36 B.R. at 682–83.  Many courts, including the court below, have relied on statements made by Senator DeConcini during a Congressional debate in 1983 over legislation designed to declare drunk driving debts nondischargeable for the proposition that "[b]ankruptcy was never meant to be a shield behind which drunk drivers ... can absolve themselves of liability."  *See, e.g., In re Wooten*, 30 B.R. at 359.  As Senator DeConcini noted, however, Congress had in fact created such a loophole in its enactment of § 523(a)(6) as part of the 1978 Bankruptcy Code.  *Id.; see also In re Kuepper*, 36 B.R. at 682–83 (citing 1983 Senate Report ac-knowledging loophole for drunk driving debts).  Recent legislation has finally plugged this loophole: Section 371 of the Bankruptcy Amendments of 1984 added a new paragraph to § 523, codified at 11 U.S.C. § 523(a)(9), which expressly provides that drunk driving debts are nondischargeable.  *See* Bankruptcy Amendments of 1984, Pub.L.No. 98–353, § 371, 98 Stat. 333, 364 (1984).  This legislation does not apply to the instant case because it only affects cases filed 90 days after its enactment.  *See id.* § 553(a), 98 Stat. at 392.  Each party nevertheless contends that the amendment to § 523 supports his position.  Minihan maintains that the amendment demonstrates a congressional recognition that pre-existing law allowed a loophole for drunk driving debts.  Cassidy contends that the amendment was intended only to clarify pre-existing law.  The Court finds neither argument persuasive.  The only relevant legislative intent is the intent of the 95th Congress; the understanding of the 98th Congress is not controlling with respect to the meaning of § 523(a)(6).  *But cf. In re Cunningham*, 48 B.R. 641 (Bankr.W.D. Tenn.1985).