**In re Augustine GONZALES, Debtor.**

**John T. CARMODY, Donna M. Carmody, and John T. Carmody, as Personal Representative of the Estate of Albert M. Carmody, Deceased, Plaintiffs,**

v.

**Augustine GONZALES, Defendant.**

**Bankruptcy No. 84–04009.**
**Adv. No. 84–0486.**

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 4, 1985.

Charles R. Koehn, Green Bay, Wis., for plaintiffs.

Challoner Morse McBride, Sturgeon Bay, Wis., for defendant.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

On July 5, 1980, the defendant debtor, Augustine Gonzales, while operating a motor vehicle, struck Albert Carmody, who was walking along the highway. Albert died as a result of the accident, and his parents, plaintiffs herein, subsequently brought suit against the debtor in the Door County Circuit Court. Following a jury

trial, they recovered judgment against Gonzales in the sum of $54,764.85. They allege that he was intoxicated at the time of the accident, and they have asked this court to determine that the judgment is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.[1]

At the trial in this court on July 18, 1985, the following facts appeared. In the early morning, around midnight to 1:00 A.M. on the 5th of July, following a long holiday spent in driving around, swimming, watching a parade, drinking beer, talking to acquaintances and watching stock car races, Gonzales, then 17, was driving north on a rural blacktop highway. He was driving a 1968 Ford Mustang and was accompanied by his brother, Pasquale, who was then 21 years old.

Visibility at the time was poor. It was drizzling, the car's wipers were going, the pavement was wet, and there was mist rising from the surface of the road. A police officer described the road as a "wide" type Wisconsin blacktop country road. On either side, there were extensions of perhaps six additional feet of blacktop, which were intended for use as bicycle paths or walkways. These were not separated from the highway proper in any way other than by a painted six inch white line. The road was winding and hilly, although there was a straight portion of highway where the accident occurred.

In this setting, Albert Carmody and a friend, John Beck, were walking along the highway in the same direction that the debtor and his brother were driving, and on the same side of the road. Although there was some disagreement as to when they got there, the evidence indicated that at the time of the accident, Albert Carmody and Beck were on the northbound side of the road. The debtor testified that Albert had come running across the highway from the left, whereas Beck placed the two in the bike path, with Albert to Beck's right. An investigating officer testified there was not room for the impact to have happened as Beck described it, and there was no proof to support the debtor's version, other than his own testimony.

The debtor failed to stop after the accident. He said it was because he was scared. Some 30 miles away, Michael Albertson, a police officer began following the debtor's car, which fit the description of a car in a reported possible hit and run accident. Having in mind that report, when the car crossed the center line three times in the space of a mile, Albertson pulled it over. He talked to the debtor who was driving, and observed there was a strong odor of intoxicants in the car and on the debtor's breath. He testified that the debtor had trouble in getting out of the car, and that he failed three field sobriety tests—a heel to toe 10 foot walk, a balance test consisting of standing first on one foot and then on the other, and a "finger to nose" test. Albertson issued a citation for driving under the influence of intoxicants.

The plaintiffs have offered, as an exception to the hearsay rule under Rule 803(8) of the Federal Rules of Evidence, a certified copy of the results of a police department breathalyzer test administered to the debtor. It indicates a blood alcohol content (BAC) of .17%. The officer or officers who administered the test and reported the result were not called as witnesses. There appears to be no question as to the report's authenticity, as required by Rule 901, and Rule 803(8)(B) permits receipt, as a hearsay exception, of a record or report of "matters observed pursuant to duty imposed by law as to which matters there was a duty to report ..." It is nevertheless problematical whether the report should be admitted under Rule 803(8), even though it is shown that the officer testified and the report was received in evidence at the earlier state court trial. The difficulty lies in the fact that this evidence is of such overwhelming

1. § 523 Exceptions to discharge.
   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

importance to the issue that must be decided here, and without the testimony of the witness who prepared the report, there is no way of knowing what weight should be given to it. Under the court's view of this case, it is not necessary to decide whether or not the report is admissible, but on balance, the court believes the officer who produced the report should be available for cross-examination.

In criminal proceedings on July 15, 1981 after plea bargaining and on a plea of "No Contest," the debtor was convicted of (1) leaving the scene of an accident, (2) obstructing an officer who is acting in an official capacity, and (3) operating a motor vehicle while his driver's license was revoked. In the plaintiffs' civil action, in accordance with Wisconsin's comparative negligence law and Wisconsin practice, the jury returned a special verdict on June 13, 1984. The jury found the debtor and Albert Carmody both causally negligent, and taking such combined causal negligence as 100%, attributed 80% to the debtor and 20% to Albert.

On October 1, 1984 when this chapter 7 case was commenced, the only nondischargeability section of the Bankruptcy Code applicable to the foregoing facts was § 523(a)(6). A new section that applies to cases filed on and after October 9, 1984, § 523(a)(9) [2], was added to the list of non-dischargeable obligations by The Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353. To be declared non-dischargeable under § 523(a)(9), a debt must "arise" from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred as a result of the debtor's operation of a motor vehicle while legally intoxicated.

Since the effective date of the Bankruptcy Code in 1979, bankruptcy courts have been in disarray as to whether the voluntary act of drinking and driving while intoxicated constitutes conduct sufficiently intentional to support a finding of willfulness and malice and thus nondischargeability under § 523(a)(6). Most of the courts have held that it does not. The plethora of cases interpreting and construing those terms, "willful" and "malicious", and attempting to decide whether a drunk driver who acts with "reckless disregard" is also "willful and malicious" are collected and analyzed in a comprehensive article, "Accidental 'Willful and Malicious Injury': The Intoxicated Driver and Section 523(a)(6)," 1 Bankr.Dev.J. 135 (1984). It serves no purpose to give a warmed over analysis of these many cases here, but may be noted that they do not include any decisions by the court of appeals for this circuit or by a district judge of this district.

The Honorable James E. Shapiro of this court faced the problem in the case of *In re Kuepper*, 36 B.R. 680 (Bankr.E.D.Wis. 1983). In that case, the debtor with a blood alcohol level of .1% drove a motorcycle across the center line of a highway into another motorcycle. Judge Shapiro ruled that the liability resulting from that accident was discharged. See also, *In re Naser*, 7 B.R. 116 (Bankr.W.D.Wis.1980).

While the enactment of § 523(a)(9) may perhaps resolve many of the problems that bankruptcy courts in other states have had to face regarding the dischargeability of obligations arising from drunk driving, the same may not happen here in Wisconsin. True, in a criminal case where the charge is driving under the influence of an intoxicant, there can be a finding of guilt following trial or a guilty plea, but prosecutors may now elect to use an alternative stat-

---

2. § 523 Exceptions to discharge.
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred;

ute, Wis.Stats. § 346.63(1)(b), which would not furnish such a definitive answer.[3]

In civil actions, by reason of Wisconsin's comparative negligence statute, the commonplace use of special verdicts, and particularly the abolishment of gross negligence in negligence and contribution cases, *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1961), it is unlikely that we will see any jury verdicts or judgments that declare, *per se*, that a debtor was driving "while legally intoxicated."[4]

This is not to say that a debt cannot arise from a judgment wherein liability is incurred by the debtor as a result of drunk driving where the findings of the court or jury do not specifically or inherently include a finding of intoxication. It appears, however, that bankruptcy courts in this state will be left to address these § 523(a)(9) questions[5] in much the same manner as Judge Shapiro in the *Kuepper* case regarding § 523(a)(6) where he said, 36 B.R. at 683:

"When deciding what constitutes willful and malicious conduct [a judgment wherein liability was incurred as a result of driving while legally intoxicated], a Court must take into consideration the unique facts of the case before it, and no two cases present identical facts."

In the case of *In re Adams*, 761 F.2d 1422 (9th Cir.1985), a bankruptcy case filed on November 12, 1982, the court said if it were limited to the language of § 523(a)(6) and the legislative history in existence pri-

or to the 1984 amendment, it would be a close question as to whether driving while intoxicated constituted conduct that is willful and malicious within the meaning of that section. The court then held that in enacting § 523(a)(9), Congress prescribed the manner in which § 523(a)(6) should be construed and declared the debt to be non-dischargeable. In the *Adams* case, the debtor had pleaded guilty to a state charge that he was driving while under the influence of alcohol.

In the case at bar, on a dark rainy night on a winding and hilly blacktop country road with mist rising from the road and visibility poor, the debtor struck a pedestrian walking in the same direction and on the same side of the road. After crossing the center line of that road three times in the course of a mile, he was stopped by an officer who observed a strong odor of intoxicants in the car and on his breath and was administered three field sobriety tests which he failed. Assuming, as held by *Adams*, that § 523(a)(9) represents a clarification of § 523(a)(6) and not a change in the law, yet there is no state court finding here, as there was in the *Adams* case, that the debtor was driving while intoxicated. Even if § 523(a)(9) is to be applied as *Adams* says, on the evidence presented, this case presents a much more difficult question.

In the more recent case of *In re Compos*, 768 F.2d 1155 (10th Cir.1985), the court

---

**3.** In Wisconsin in 1981, "a new strict liability crime was created to deal with the drinking driver. Under the prior law, if a driver had a Blood Alcohol Content (BAC) of .10 or above, it was prima facie evidence that he was under the influence of an intoxicant. Under the 1981 law, driving with a BAC of .10 or above became, in and of itself, a crime, while driving under the influence of an intoxicant was retained as a separate crime. Prosecutors were given the authority to prosecute drinking drivers under either or both of these crimes." "Heads I win, tails you lose," Wis. Bar Bulletin, p. 11 (August, 1985)

**4.** In the case at bar, there were three criminal convictions following a plea of "No Contest," none of which is concerned with driving while intoxicated, and a civil judgment based on a special jury verdict which found the debtor 80%

causally negligent, Albert Carmody 20% causally negligent, and then fixed the amount of money damages.

**5.** In order to determine whether a debt arose from a judgment wherein liability was incurred as a result of driving while intoxicated, where the judgment itself does not provide the answer, it seems possible that a large portion of our future trials will be concerned with the testimony of experts who have administered BAC tests and cross-examination of such experts testing the validity of their findings. Note that Wis. Stats. § 346.63(1)(a) also makes it an offense to operate a motor vehicle under the influence of a "controlled substance" or "any other drug" that renders the person incapable of safely driving. Query whether these fall within the language or intent of § 523(a)(9) of the Bankruptcy Code.

said, "We have carefully reviewed the [*Adams*] opinion, but do not agree with its interpretation of § 523(a)(6) or its retroactive application of § 523(a)(9)." The court held "that § 523(a)(6) requires proof of an intent to injure before a debt can be held to be nondischargeable under that provision of the Code." The instant case falls far short of such proof.

This court agrees with the *Compos* decision and with the majority of the bankruptcy court decisions interpreting § 523(a)(6), including that of Judge Shapiro in the *Kuepper* case, which hold that under § 523(a)(6) drunk driving is not per se "willful and malicious" and that to make debts nondischargeable under that section, proof of an intent to injure is required. The court holds that the debt owed to the plaintiffs by the debtor is discharged.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### ORDER

On November 21, 1984, the plaintiffs commenced this adversary proceeding asking the court to determine that the debt owed to them by the debtor is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. The issues were tried on July 18, 1985 and the court has this day issued a written decision standing as and for its findings of fact and conclusions of law, wherein the court held that the debt owed to the plaintiffs by the debtor is discharged. In accordance with the court's decision,

IT IS ORDERED that plaintiffs' complaint be, and the same is hereby dismissed without costs.