In re Thomas TANEFF, Debtor.

Michael L. HOEHN, et al., Plaintiffs,

v.

Thomas TANEFF, Defendant.

Bankruptcy No. 92–12142 B.
Adv. No. 93–1162 B.

United States Bankruptcy Court,
W.D. New York.

Sept. 30, 1994.

Leonard F. Walentynowicz, Buffalo, NY, for plaintiffs.

Addelman & Marszalkowski, P.C., Buffalo, NY (David R. Addelman, of counsel), for debtor/defendant.

CARL L. BUCKI, Bankruptcy Judge.

Drunken driving is a plague that persists as a threat to the health and safety of all Americans. Even before the advent of the automotive age, legislatures recognized the dangers of alcohol abuse and sought through legislation to curb this problem. One of the earliest of these attempts was the Dram Shop Act.[1] More recently, Congress has attempted to restrict the dischargeability of certain debts arising from the unlawful operation of a motor vehicle while intoxicated. The issue now before this Court is whether bankruptcy can discharge a non-driver from liabilities that were designed to deter the sale of alcohol to persons who are or will thereby become intoxicated.

The debtor, Thomas Taneff, was the owner and operator of a tavern in the City of Lack-

---

1. In New York State, the Dram Shop Act had its inception in 1873 (L.1873, ch. 646).

awanna, New York. It is alleged that on the evening of September 7, 1991, Mr. Taneff permitted the sale of alcohol to James P. Verner, that Verner was a known alcoholic, and that he became intoxicated. Shortly after leaving the tavern, while driving his automobile, Verner became involved in a tragic accident in which three people died. Fatalities included Verner, his passenger, and Beth Ann Hoehn. In addition, Mrs. Hoehn's husband suffered severe personal injuries. Seeking to recover damages both for his own injuries and on account of the wrongful death of his wife, Michael L. Hoehn commenced an action in New York State Supreme Court. Among his causes of action was one against the tavern keeper, Thomas Taneff, based upon New York's Dram Shop Act.[2] Meanwhile, Thomas Taneff had filed a petition for relief under chapter 13 of the Bankruptcy Code on June 16, 1992. The case was then converted to chapter 7 on March 3, 1993. Having duly scheduled Michael L. Hoehn as a creditor, Taneff now contends that he is entitled to the discharge of any liability involving the Verner accident.

Michael L. Hoehn commenced the present adversary proceeding to secure a determination that his claims are nondischargeable pursuant to the provisions of either subdivision a(6) or subdivision a(9) of section 523 of the Bankruptcy Code. The issue now comes before this court on the debtor's motion for summary judgment. Neither party has cited any decision which specifically addresses the dischargeability of Dram Shop claims. Rather, both sides base their positions upon broader standards for interpreting the exceptions to discharge as set forth in 11 U.S.C. § 523(a).

 Section 523(a) of the Bankruptcy Code provides that a discharge under chapter 7 "does not discharge an individual debt-

or from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." The requirement for a willful and malicious injury is not an easy standard, but one which applies only to exceptional situations. Although involving the violation of a security interest, the recent decision of this Court in *In re Contella*, 166 B.R. 26 (Bkrtcy.W.D.N.Y. 1994) sets forth the applicable standard:

"The concept of willfulness requires not merely an intent to commit the wrongful act but an actual intent to inflict the resulting injury upon the affected creditor.... Malice requires conduct that is not merely tortious, but which is also wrongful and without just cause or excuse." *Id.* at 28.

The primary issue in this case is whether the plaintiff can demonstrate an actual intent to inflict injury. While acknowledging the distinction between an intentional act and an intentional injury, can one nonetheless identify circumstances in which an intent to act will demonstrate an intent to injure? Specifically, under the particular circumstances of this case, can Hoehn prove the necessary intent through means of a showing that the debtor intentionally committed a tortious act? In the context of intoxicated driving, the decisions appear to divide into two camps. The first has required not merely that the debtor's conduct be willful and malicious, but that the resulting injury be willfully and maliciously intended. Following this view, the Eighth and Tenth Circuits have held that drunken driving claims are not per se nondischargeable. *Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986), and *In re Campos*, 768 F.2d 1155 (10th Cir.1985). Under this authority, to establish non-dischargeability, it is insufficient to show alcohol consumption as an intentional act. As stated in *In re Campos*, 768 F.2d at 1158, section 523(a)(6) "requires instead an intentional or deliberate injury."

---

2. Now found in N.Y. GENERAL OBLIGATIONS LAW § 11–101 (McKinney 1989), the Dram Shop Act provides in relevant part as follows:

"1. Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages."

The second line of cases holds that tort liabilities are non-dischargeable when resulting from conduct that is willful and malicious, even though the resulting injury may not be intended. The Ninth and Eleventh Circuits have specifically applied this standard to drunken drivers. *In re Adams,* 761 F.2d 1422 (9th Cir.1985) and *In re Fielder,* 799 F.2d 656 (11th Cir.1986). As stated in *In re Adams,* 761 F.2d at 1428 (quoting *Coen v. Zick,* 458 F.2d 326, 329 (9th Cir.1972)), the exception to discharge "is measured by the nature of the act, i.e., whether it was one which caused willful and malicious injuries. All liabilities resulting therefrom are nondischargeable."

Amendments to the Bankruptcy Code in 1984 and 1990 have resolved much of the uncertainty regarding the dischargeability of claims arising from alcohol abuse. Specifically, Congress added a ninth exception to discharge, which in its present form extends to claims "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." Thus, willful and malicious intent is no longer required to avoid discharge of a claim related to the debtor's intoxicated driving.

▮ Notably, section 523(a)(9) of the Bankruptcy Code references only the intoxication of a debtor/driver. In the present instance, the debtor is not the operator of the car, but one who served alcohol to the driver. Contrary to the suggestion of counsel for plaintiff, this exception simply does not speak to the liability of any party other than the drunken driver. Accordingly, the nondischargeability of a Dram Shop Claim must flow, if at all, from the willful and malicious injury exception of 11 U.S.C. § 523(a)(6). For this reason, this court must revisit the debate regarding the meaning of willful and malicious. Because neither party cites any binding authority from the Second Circuit, it is necessary to examine section 523 in light of the underlying theory of tort recovery.

▮ In the view of this Court, the correct interpretation is that a willful and mali-cious injury arises whenever a debtor commits a willful and malicious act that inevitably imposes an unreasonable danger of injury. Indeed, it is the inevitability of danger which transforms a merely tortious act into conduct whose consequences are willful and malicious. Each person is responsible "for the natural and proximate consequences" of his or her own conduct. *Garrison v. Sun Printing & Publishing Association,* 207 N.Y. 1, 7, 100 N.E. 430 (1912). It is the essence of tort law that the character of particular conduct will define the compensable nature of an injury.[3] To the extent that a defendant is found to have acted wrongfully, he or she becomes liable for proximate damages resulting therefrom. In short, an injury is wrongful whenever the underlying conduct is wrongful. So too, degrees of wrongfulness must follow from conduct to injury. If a defendant acts willfully and with malice to create an inevitable and unreasonable danger, any proximately resulting injury is willful and malicious, even if the extent of injury was never intended. To hold otherwise would create anomalies that fall beyond justification. Suppose, for example, that a defendant wished to blind his victim in one eye, but unintentionally caused blindness in both. If the debtor must intend the specific injury as opposed to the infliction of some injury, then only half of the resulting claim would be non-dischargeable. The more rational holding would be to assign the same degree of culpability to any injury that proximately accrues from an inevitable danger that results from the defendant's willful and malicious act. The key ingredient is inevitability. To the extent that a debtor maliciously and intentionally commits some act whose inevitable consequence is the creation of danger, then every proximate consequence must also be deemed a willful and malicious injury.

As to the effect of alcohol upon driving judgment, no American can live in a fantasy land. State prohibitions against drunken driving stand as a clear acknowledgement of the dangers of alcohol abuse. Alcohol is an inherently dangerous substance known to dull the senses and to transform the most

---

3. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 1, at 6 (5th ed. 1984) ("So far as there is one central idea, it would seem that it is that liability must be based upon conduct which is socially unreasonable.)"

careful of drivers into a roadway menace. As the holder of a liquor license, the debtor was presumed to understand the effect of alcohol and to know the legal prohibitions against drunken driving.[4] By reason of the Dram Shop Act, the debtor further assumed a legal obligation to those members of the innocent public who might choose to use the same highway as the debtor's customers.

Plaintiff alleges that he possesses a valid claim under New York's Dram Shop Act. Encompassed within this claim is the assertion that the debtor violated section 65 of the New York Alcohol Beverage Control Law in that he served alcoholic beverages to a person who was either visibly intoxicated, or a known habitual drunkard. If indeed these allegations are true, and if the debtor knew or should have known that this customer might possibly drive an automobile, then the plaintiff would have fully established that his claim is for a willful and malicious injury.

The mere presence of an intoxicated driver upon a highway constitutes an unacceptable adverse injury to the peace and safety of the driving public. Though damages may be nominal in the absence of a collision, the intentional service of alcohol to the offending driver creates an adverse consequence in all instances. The inevitability of danger is such that the character of the underlying conduct will attach to any proximate injury.

To release a drunken driver onto the highways is much like shooting a gun into a dark room filled with people. Knowing the certain impact of drunken driving, a tavern keeper's sale of alcohol to such an individual is an intentional act to impose danger upon the class of innocent highway users. Because that danger is so inevitable and so likely of deadly consequences, such sales inherently entail an actual intent to inflict whatever injury may result. In the face of all that a tavern keeper is presumed to know about the adverse affect of alcohol consumption, such a tortious sale is inherently malicious.

Plaintiff's complaint asserts two causes of action. The first is predicated upon 11 U.S.C. § 523(a)(6). As to this claim, the plaintiff has alleged sufficient facts to overcome the debtor's motion for summary judgment. The Court will, therefore, afford Hoehn an opportunity, consistent with the standards set forth above, to establish the willful and malicious nature of his claim by a preponderance of evidence. The second cause of action is predicated solely upon 11 U.S.C. § 523(a)(9). Because this section does not apply to a non-driver/debtor, partial summary judgment is appropriate as to this cause of action.

Accordingly, summary judgment is denied with respect to the first cause of action, but is granted with respect to the second cause of action.

So Ordered.

---

4. *See* 9 NYCRR § 48.2, which contains regulations concerning conduct on premises that are licensed for consumption of liquor in New York State. This section provides in relevant part as follows: "It shall be the obligation of each person licensed pursuant to this Part to insure that a high degree of supervision is exercised over the conduct of the licensed establishment at all times in order to safeguard against abuses of the license privilege and violations of law. Each such licensee will be held strictly accountable for all violations that occur in the licensed premises and are committed by or suffered and permitted by any manager, agent or employee of such licensee."