In re David Rock **HUDSON**, Debtor.

**Gregory STACKHOUSE and Esther Stackhouse, Appellants,**

v.

**David Rock HUDSON, Appellee.**

No. 87–3913.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1988.

Decided Oct. 27, 1988.

John J. Dorman, Tacoma, Wash., for appellants.

Charles A. Schaaf, Forks, Wash., for appellee.

Before FLETCHER and WIGGINS,* Circuit Judges, and CARROLL, District Judge.**

FLETCHER, Circuit Judge:

Gregory and Esther Stackhouse appeal from the Ninth Circuit bankruptcy appellate panel (BAP) decision affirming the bankruptcy court's grant of summary judg-

---

* Judge Wiggins was drawn to replace the late Circuit Judge J. Blaine Anderson. Judge Wiggins has read the briefs and reviewed the record.

** The Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation.

ment in favor of David Rock Hudson (debtor) holding that any judgment debt that might be entered in a pending suit for damages arising from drunk driving would be dischargeable. The dispositive issue on appeal is whether 11 U.S.C. § 523(a)(9), requires that a creditor obtain judgment for damages against a debtor prior to the debtor's filing for bankruptcy as a prerequisite to having declared nondischargeable a debt arising from damages caused by drunk driving. We hold that a prepetition judgment is not required, and reverse the decision of the BAP.

## FACTS

The facts are not in dispute. On March 28, 1982, Gregory Stackhouse was seriously injured in an automobile-motorcycle collision with Hudson. Immediately after the collision, a Washington state trooper administered a breathalyzer test to Hudson. He was cited for and later convicted of driving while intoxicated.

Stackhouse and his wife filed suit against Hudson in state court for injuries sustained in the accident. On December 12, 1985, the day before trial was to begin, Hudson filed a Chapter 7 petition in bankruptcy. The state court action was stayed.

The United States Bankruptcy Court for the District of Western Washington set April 7, 1986 as the last day for filing complaints to determine dischargeability under § 523(c). On March 24, 1986, Hudson filed a complaint to determine the dischargeability under § 523(a)(9) of the Stackhouses' state tort claim against him. The Stackhouses had until April 28, 1986, to respond. On April 24, 1986, the Stackhouses filed an answer to the complaint, with counterclaims against Hudson.[1] The response was timely under § 523(a)(9), but was filed after the deadline for filing § 523(c) nondischargeability complaints.

On April 23, 1986, the bankruptcy judge granted a discharge to Hudson on the ground that no complaint objecting to discharge had been filed within the allowed time. Hudson then filed a motion for summary judgment on his complaint, based on the discharge already granted. Hudson also argued that the Stackhouses could not recover under § 523(a)(9) because they did not have a judgment or consent decree as required by the statute.

On September 9, 1986, the bankruptcy court ordered that judgment be entered in favor of Hudson. The court found the Stackhouses' claim against Hudson dischargeable because 11 U.S.C. § 523(a)(9), by its literal terms, exempts from discharge only those drunk-driving claims that have been reduced to judgment before the filing of bankruptcy. The court further found that § 523(a)(6) was equally unavailing because the Stackhouses had not requested relief under that subsection pursuant to 11 U.S.C. § 523(c), and that even if such relief could be found in the counterclaim, it was untimely pursuant to Bankr. R. 4007(c).

The BAP affirmed the bankruptcy court's decision. *In re Hudson,* 73 B.R. 649 (9th Cir. BAP 1987). The Stackhouses timely appeal to this court.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over appeals from the BAP under 28 U.S.C. § 158(d). The BAP's conclusions of law are subject to *de novo* review. *In re American Mariner Ind.,* 734 F.2d 426, 429 (9th Cir.1984).

## DISCUSSION

This is the first time a federal appeals court has been called upon to interpret the dischargeability provision of 11 U.S.C. § 523(a)(9). Our objective when interpreting a federal statute "is to ascertain the intent of Congress and to give effect to legislative will." *United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). "The most persuasive evidence of ... [congressional] intent is the words selected by Congress." *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1032 (9th Cir.1987) (quoting *Director, Office of*

---

**1.** By stipulation of the parties, the counter-    claims were later dismissed.

*Workers' Compensation Programs v. Forsyth Energy, Inc.,* 666 F.2d 1104, 1107 (7th Cir.1981)). We thus begin with the language of the statute itself, *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1212–14, 94 L.Ed.2d 434 (1987).

### A. *Current Interpretation of 11 U.S.C. § 523(a)(9)*

The language of § 523(a)(9) reads as follows:

> A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (9) to any entity, *to the extent that such debt arises from a judgment or consent decree* entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred[.]

11 U.S.C. § 523(a)(9) (Supp.1986) (emphasis added). Although the code section describes the subject debt as one which arises from a judgment or consent decree, the statute does not specifically address whether a claim must be reduced to judgment or consent decree *before* the debtor files for bankruptcy. This had encouraged debtor parties to argue that the statute requires reduction of the claim to judgment or consent decree prior to bankruptcy. However,

the bankruptcy courts addressing this issue have, until this case, unanimously concluded that the language of § 523(a)(9) does not require that a claim be reduced to judgment or consent decree prior to the offender's bankruptcy.[2]

These courts have reasoned that, given the clear intent of Congress to prevent drunken drivers from escaping liability by discharging debts in bankruptcy, adherence to a requirement that a creditor first obtain a "judgment or consent decree" would effectively nullify the statute. Such an interpretation would merely encourage drunk drivers to file preemptively for bankruptcy once it became clear that they would be held civilly accountable for their actions. As the court observed in *In re Thomas,* 51 B.R. 187 (Bkrtcy.E.D.Va.1985), "[a]s worded, the legislation gives quick-thinking drunks or their attorneys an out. If they can race to the U.S. Bankruptcy Court before the injured can obtain a state court judgment, the intoxicated debtor can still prevail." *Id.* at 188–89. The court went on to note that such a "race" would give the debtor a clear advantage since it takes "considerably longer to obtain a judgment than it does to file bankruptcy." *Id.* at 189. Concluding that Congress could not have intended this result, the court gave "[a] creditor who has not had reasonable time to seek a judgment in state court ... leave of this court to diligently prosecute his claim in state court." *Id.* at 189.

The same conclusion was reached in *In re Ganzer.* Likewise acknowledging that a statute requires a judgment or consent decree, the *Ganzer* court expressed even stronger condemnation of reading it to require that the creditor obtain judgment before the bankruptcy petition is filed:

> Presumably, Congressional intent in enacting 11 U.S.C. § 523(a)(9) was to preclude a debtor's discharge from liability on a claim arising out of the operation of a motor vehicle while under the influence

---

2. *See In re Rose,* 86 B.R. 86 (Bkrtcy.E.D.Mich. 1988); *In re Smith,* 83 B.R. 433 (Bkrtcy.E.D. Mich.1988); *In re Jones,* 80 B.R. 974 (Bkrtcy.W. D.Mo.1987); *In re Anderson,* 74 B.R. 463 (Bkrtcy.E.D.Wis.1987); *In re Tuzzolino,* 70 B.R. 373 (Bkrtcy.N.D.N.Y.1987); *In re Carney,* 68 B.R. 655 (Bkrtcy.D.N.H.1986); *In re Leach,* 63 B.R. 724 (Bkrtcy.S.D.Ind.1986); *In re Richards,* 59 B.R. 541 (Bkrtcy.N.D.N.Y.1986); *In re Ganzer,* 54 B.R. 75 (Bkrtcy.D.Minn.1985); *In re Thomas,* 51 B.R. 187 (Bkrtcy.E.D.Va.1985); *In re Cardona,* 50 B.R. 596 (Bkrtcy.S.D.Fla.1985).

of alcohol. If a *prepetition* judgment determining liability to have been incurred by the debtor under such circumstances, be required, the statute is practically useless. Only in cases of legal malpractice will prepetition judgments ever be entered. This Court will not presume Congress to have intended to sabotage its legislation and create such an absurdity.

54 B.R. at 76–77 (emphasis in original).

Rather than endorse an absurd result clearly contrary to expressed legislative intent, bankruptcy courts have uniformly followed *Thomas* and *Ganzer*. *See, e.g., In re Leach*, 63 B.R. at 727 ("The appellant has not cited case authority, nor is this court aware of any, which supports the proposition that § 523(a)(9) is only available to claimants who reduce their claims to judgment or consent decree before the debtor files in bankruptcy"); *In re Carney*, 68 B.R. at 656 ("The absence of a judgment prior to bankruptcy has been deemed immaterial under § 523(a)(9) of the Code").

B. *Legislative History of 11 U.S.C. § 523(a)(9)*

We are mindful of the principle that where a statute is clear on its face, it is unnecessary to look to its legislative history to discern its meaning and scope. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). "Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington Northern R.R. Co. v. Oklahoma Tax Com'n*, 481 U.S. 454, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). *See also Blum v. Stenson*, 465 U.S. at 896, 104 S.Ct. at 1548 ("[W]e look first to the statutory language and then to the legislative history if the statutory language is un-

clear"); *Mobil Sales & Supply Corp. v. Panamax Venus*, 804 F.2d 541, 542 (9th Cir.1986).

With respect to the timing of the reduction of a claim to "judgment or consent decree" under 11 U.S.C. § 523(a)(9), the statutory language is unclear. In this respect, the statute is ambiguous. Thus, we must examine the legislative history in order to construe the statute in such a way as to "give effect to the legislative will." *Taylor*, 802 F.2d at 1113.

The impetus behind § 523(a)(9), as expressed in Congressional members' statements on the record, supports the reading the bankruptcy courts have adopted. The origin of what was to become § 523(a)(9) was a bill introduced by Senator Danforth to amend Title 11 of the Code. The legislation he proposed in S. 605 was intended to clear up the conflict in the courts over the dischargeability of DWI judgments. At the time, persons with claims against debtors arising from drunk driving could protect their claims from discharge only if they succeeded in characterizing drunk driving as a "willful" offense under § 523(a)(6). In the majority of states, however, drunk driving was not classified as willful. S. 605 aimed to resolve this anomaly by declaring that all such debts would be deemed to be willful and malicious for purposes of § 523(a)(6).[3] Sen. Danforth explained:

> Today there exists an unconscionable loophole in the bankruptcy statute which makes it possible for drunk drivers who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal bankruptcy court. This loophole affords opportunities for scandalous abuse of judicial processes.

129 Cong.Rec. S1622 (daily ed. Feb. 24, 1983). He continued by relating a story of

---

**3.** The proposed legislation would have added a new subsection to § 523 consisting of the following:

"(e) Any injury resulting in a judgment based upon liability of the debtor where, in connection with such liability such debtor was found

to have operated a motor vehicle while legally intoxicated shall be deemed to be a willful and malicious injury for purposes of subsection (a)(6) of this section."

S. 605, 98th Cong., 1st Sess. (1983).

a drunk driver who was ordered to pay $600,000 to the families of three teenagers and promptly walked across the street to bankruptcy court to escape civil liability. While anecdotal evidence such as this probably first brought the problem to the attention of lawmakers, Sen. Danforth's references to "escap[ing] civil liability" and "scandalous abuse of judicial processes" suggest that Congress was concerned less with whether a judgment had been obtained against the debtor than with the underlying conduct giving rise to the cause of action. A drunk debtor escapes liability no less by filing for bankruptcy before a judgment is recovered against him than he does by filing afterward, and the seeming abuse of process is no less "scandalous."

The language that finally became § 523(a)(9) was proposed by Senators Dole and Thurmond and was added as an amendment to S. 445, the Omnibus Bankruptcy Improvements Act of 1983. S. 1013, 98th Cong., 1st Sess. (1983). It was essentially a modified version of the bill originally introduced by Sen. Danforth. Statements of other legislators bear out the contention that combating drunk driving, and not protecting judgments, was the paramount concern of Congress. As summed up by Senator Heflin:

> Also contained in this package is a modified version of a bill introduced by Senator DANFORTH which provides that a debt incurred as a result of an act of drunk driving is not dischargeable.... By making such debts nondischargeable, we can protect victims of the drunk driver and deter drunk driving....
>
> [T]his amendment [will] prevent the discharge of judgments *or claims* where the debtor's operation of a motor vehicle while legally intoxicated were to occur.

129 Cong.Rec. S5362 (daily ed. April 27, 1983) (emphasis added). Rep. Rodino, Chairman of the House Committee on the Judiciary, stated that § 523(a)(9) "clarifies present law relating to the nondischargeability of debts incurred by drunk drivers. Debts incurred by persons driving while intoxicated are presumed to be willfully and maliciously incurred under this provision." 130 Cong.Rec. H7489 (daily ed.

June 29, 1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 576, 577.

Two members of Congress did refer specifically to judgments. Sen. Dole said the provision was intended "to ensure that victims of the drunk driver do not have their judgments against the drunk driver discharged in bankruptcy." 130 Cong.Rec. S8890 (daily ed. June 29, 1984). Rep. Sawyer noted that "[j]udgments against drunk drivers for personal injuries ... could be discharged in bankruptcy like any other judgment; now that is prohibited." 130 Cong.Rec. H7492 (daily ed. June 29, 1984). However, nothing in these remarks *excludes* claims not yet reduced to judgment.

Although no report was submitted with the final legislation, a Senate Judiciary Committee Report did accompany the Omnibus Act at its introduction. It described the provision as follows:

> Subtitle "D" of the Committee bill is a modified version of S2159 (97th Congress), a bill introduced by Senator Danforth which would render debts incurred as a result of an act of drunk driving nondischargeable in bankruptcy. Under present law, a debt that is the result of a tortious act—*such as a judgment* against a debtor as the result of an automobile accident—is non-dischargeable only if the debt is the result of a "willful and malicious injury" to the property or person of another.
>
> In most states, an injury resulting from an act of drunk driving will support a finding only of negligence on the part of the driver. Thus, more often than not, the debt is discharged—unless the bankruptcy court finds that the act of drunk driving was a willful and malicious act by the nature of the circumstances surrounding it.
>
> This bill will help deter drunk driving, and protect victims of the drunk driver, by making such debts non-dischargeable in bankruptcy. Where a debt was incurred by the debtor as a result of an act of drunk driving, that debt will not be dischargeable regardless of any court finding that willful, wanton, or reckless behavior was or was not involved.

S.Rep. No. 98–65, 98th Cong., 1st Sess. 43–44 (1983) (emphasis added). The report uses the word "judgment" as merely one example of a nondischargeable debt. It manifests Congress' primary intent to put liability resulting from drunk driving on the same legal footing as liability arising from a "willful" act, which was nondischargeable under § 523(a)(6).

We think it evident that Congress sought three objectives when it adopted § 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving. The interpretation of the statute adopted by the BAP advances none of these goals. Rather, it focuses undue attention on the intermittent appearance of the word "judgment" in congressional colloquy at the expense of a recognition of the broader goals of the statute. It makes an unfortunate distinction between debts that are dischargeable or nondischargeable based on whether the victim has reduced it to judgment prior to the debtor's bankruptcy. Under BAP's reading, those who do not recover quickly enough from their injuries, those who attempt first to settle their claims and spare the expense of going to court, and those who live in jurisdictions where a simple civil case may take years to come to trial lose their claims.

Such a holding encourages a "race to the courthouse" that the debtor can always win. "That is so because whereas the plaintiff has little or no control over the timing of the entry of a judgment, the debtor has full control over the timing of a bankruptcy petition. Thus, conceivably, a debtor can wait to file a bankruptcy petition until just after an adverse jury verdict on the underlying liability claim, (but before the entry of the judgment); under the debtor's argument, the debt would still be dischargeable in that situation." *In re Smith*, 83 B.R. 433, 435 (Bkrtcy.E.D.Mich. 1988). The purpose of the nondischargeability section in general was to remove from the debtor's capacity to discharge certain classes of debts arising from practices Congress deemed so pernicious that bankruptcy should not be able to insulate the debtor from their payment. The BAP's opinion puts control right back in the hands of the debtor. Congress, concerned with the plight of victims of drunken driving and their shattered families, could not have intended this result.

The leading bankruptcy commentator is in accord. "A creditor who has not had reasonable time to seek a judgment in state court prior to the debtor's bankruptcy should be granted leave by the bankruptcy court to diligently prosecute his claim in state court." 3 Collier on Bankruptcy ¶ 523.18A at 523–135 n. 2 (1988).

The legitimate function that the "judgment or consent decree" requirement serves—to ensure that the debtor's liability "is judicially determined to have been incurred ... as a result of the operation of a motor vehicle while intoxicated," *see Ganza*, 54 B.R. at 77—is not disturbed by allowing the judicial determination to come after the bankruptcy filing.

Congressional silence in the face of several court decisions lends further support to this common-sense interpretation of the statute. Congress passed § 523(a)(9) in 1984; the first bankruptcy court opinions construing the statute not to require a prepetition judgment appeared immediately thereafter. *See, e.g., In re Thomas*, 51 B.R. 187 (Bkrtcy.E.D.Va.1985); *In re Ganzer*, 54 B.R. 75 (Bkrtcy.D.Minn.1985). What is more, no reported decision until now has ever read § 523(a)(9) to the contrary. Congress has had the opportunity to alter § 523(a)(9) if the courts' interpretation is not what it intended. It has not done so. "[T]he very persistence ... among judges and executive officials, as well as among litigants and their counsel ... of [an] assumption ... and the absence of legislative action to change that assumption provide further evidence that Congress at least acquiesces in, and apparently affirms, that assumption." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979).

Since the enactment of § 523(a)(9), bankruptcy courts have consistently held, and

litigants relying on those opinions have assumed, that its language includes claims against drunk-driver bankrupts reduced to judgment after the commencement of the bankruptcy. We are not inclined to disturb this consistent body of law in which Congress apparently acquiesces.

The decisions of BAP and the bankruptcy court are REVERSED. We REMAND for further proceedings consistent with our opinion.

WIGGINS, Circuit Judge, Dissenting:

I was invited to join this panel after the death of Judge Anderson. He was a member of the original panel and in that capacity prepared for oral argument, heard the arguments of counsel, participated in the post-argument conference of the panel, and drafted a proposed disposition, all prior to his death. The proposed disposition of Judge Anderson is contrary to the judgment of the majority.

I exercise independent judgment as a new member of this panel. I have read the briefs carefully and have listened to the tape recordings of the oral argument. I find much to commend the result reached by the majority. It is a decision that applies common sense to an inartfully drafted statute. However, I must dissent. Judge Anderson has stated the reasons in his draft disposition which I herewith adopt in relevant part.

After reviewing the facts and stating the appropriate standard of review, Judge Anderson noted the failure of the bankruptcy courts to apply the literal wording of 11 U.S.C. § 523(a)(9). He then concluded, "with all due respect for my bankruptcy colleagues, these decisions are not persuasive." He thereupon stated his reasons:

"I.

"The reasoning behind these decisions has been premised on *presumed* congressional intent. This rationale was probably best exemplified in one of the earlier cases. In *In re Thomas*, the court acknowledged that the literal language of § 523(a)(9) requires a judgment. The court held, '[a]s worded, the legislation gives quick-thinking drunks or their attorneys an out. If they

can race to the U.S. Bankruptcy Court before the injured can obtain a state court judgment, the intoxicated debtor can still prevail.' 51 B.R. at 188–189. The court went on to note that this 'race' under the new statute gives the debtor a clear advantage since it takes 'considerably longer to obtain a judgment than it does to file bankruptcy.' *Id.* at 189. The court concluded that Congress could not have intended this result.

"The same conclusion was reached in *In re Ganzer*. Likewise acknowledging that the literal language of the statute required a judgment or consent decree, the *Ganzer* court expressed even stronger condemnation of a literal interpretation of § 523(a)(9):

Presumably, Congressional intent in enacting 11 U.S.C. § 523(a)(9) was to preclude a debtor's discharge from liability on a claim arising out of the operation of a motor vehicle while under the influence of alcohol. If a *prepetition* judgment determining liability to have been incurred by the debtor under such circumstances, be required, the statute is practically useless. Only in cases of legal malpractice will prepetition judgments ever be entered. This Court will not presume Congress to have intended to sabotage its legislation and create such an absurdity.

54 B.R. at 76–77.

"Later cases have generally either cited or alluded to these earlier authorities for the proposition that a claimant need not reduce his claim to a judgment or consent decree before the debtor files in bankruptcy. *See, e.g., In re Leach,* 63 B.R. at 727 ('The appellant has not cited case authority, nor is this court aware of any, which supports the proposition that § 523(a)(9) is only available to claimants who reduce their claims to judgment or consent decree before the debtor files in bankruptcy'); *In re Carney,* 68 B.R. at 656. ('The absence of a judgment prior to bankruptcy has been deemed immaterial under § 523(a)(9) of the Code').

"In a more recent case, *In re Jackson,* 77 B.R. 120 (ND Ohio 1987), the bankruptcy

court was again confronted with the same issue. It faced the dilemma of recognizing the literal wording of the statute on the one hand, with the case law refuting that literal wording on the other: 'Although § 523(a)(9) clearly describes the subject debt as one arising from a judgment or consent decree, some courts have ignored this requirement, or at least, have taken a very relaxed interpretation of this requirement.' 77 B.R. at 122.

"The *Jackson* court, seemingly feeling compelled to either follow case law precedent or to distinguish its case from that of the others, chose the latter alternative:

However, the court must draw the line of demarcation somewhere. The express language of the statute requires that the debt arise 'from a judgment or consent decree.' *See also,* 28 U.S.C. § 157(b)(5) (Collier 1986). If the language of the revised statute is to be given any deference at all, it would seem that as a preliminary consideration of the invocation of nondischargeability pursuant to § 523(a)(9), the civil action must have at least been commenced in state court.

77 B.R. at 123. Ultimately, the court discrepantly held that the failure of the creditor to have commenced an underlying civil action against the debtor prior to the debtor's petition in bankruptcy precluded determination that the debt was nondischargeable under § 523(a)(9).

"Here, the BAP concluded, and [I] think appropriately, that the plain meaning of § 523(a)(9) was 'very clear.' 73 B.R. at 653. Indeed, this conclusion has been substantiated by the very cases that have disregarded the literal wording of the statute. While the BAP opinion did not delve into an intricate analysis of legislative history to determine whether congressional intent was to the contrary, neither have the cases that have detoured from what may be considered the plain meaning of the statute.

"Furthermore, it is a widely established precept of bankruptcy law that in keeping with its fresh start objective, exceptions to dischargeability are to be *narrowly* construed. As was stated by a leading commentator: 'In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system.' 3 Collier on Bankruptcy, ¶ 523.05A at 523–16 and 523–17 (15th ed. 1987). *See also In re Rahm,* 641 F.2d 755, 756–57 (9th Cir.), *cert. den. sub nom.,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Long,* 774 F.2d 875, 879 (8th Cir.1985); *In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985).

"The analysis of the courts below not only ignores this fundamental canon of section 523 interpretation, it runs counter to it. *See, e.g., In re Richards,* 59 B.R. at 543 ('The court ... determines a broad construction of § 523(a)(9) is warranted ...'); *In re Pahule,* 78 B.R. 210, 211 (E.D.Wis. 1987) ('In construing ... § 523(a)(9), bankruptcy courts have given broad application to its provisions ...'); *In re Tuzzolino,* 70 B.R. at 376 (court adopts *Richards'* refusal 'to strictly interpret Code § 523(a)(9)'); *In re Leach,* 63 B.R. at 726 ('Other courts have similarly given a broad construction to § 523(a)(9) ...'). [I] find no basis for altering the Code's fresh start policy merely because the debtor happens also to have been involved in a drunk driving incident, particularly since that policy continues to adhere to those debtors whose conduct causes 'wilful and malicious injury.' *See In re Rahm,* 641 F.2d at 756–57 (§ 523(a)(6) exception to discharge strictly construed against the creditor and in favor of debtor so as to effectuate congressional policy of permitting debtor a fresh start); *see also In re Long,* 774 F.2d at 882; *In re Kimzey,* 761 F.2d at 424.

"The plain meaning of § 523(a)(9) is further bolstered by 11 U.S.C. § 727(b). Pursuant to § 727(b), the debtor may be discharged '[e]xcept as provided in [11 U.S.C. § 523] ... from all debts that arose before the date of the order for relief.' Section 301 provides that the filing of a petition constitutes an 'order for relief.' The status

of the claim at the date of the order for relief, therefore, determines whether or not the claim is dischargeable under any subsection of § 523(a). Except as specifically provided for in § 523(a), all claims that arose prior to the commencement of the case are discharged.

"Applying the facts to the law, on December 12, 1985, the date of Hudson's order for relief, appellants had only a claim against Hudson, not a judgment or consent decree. Having failed to obtain either a judgment or consent decree prior to the filing of Hudson's petition, appellants failed to come within the clear purview of § 523(a)(9). Accordingly, [I am] compelled to find their claim dischargeable pursuant to § 727(b).

"[My] conclusion that § 523(a)(9) means what it says does not leave the creditors of drunk-driving debtors entirely without a remedy. A creditor who files a timely complaint under § 523(a)(6) [footnote omitted] may still obtain a dischargeability determination against the debtor for willful and malicious injury arising out of a drunk-driving incident. [Footnote omitted] We have previously determined that § 523(a)(9) was intended as a clarification of § 523(a)(6). In *In re Adams*, 761 F.2d 1422, 1427 (9th Cir.1985), we held that 'driving while intoxicated constitutes conduct sufficiently intentional to support a finding of willfulness and malice under § 523(a)(6).' *Accord, In re Ray*, 51 B.R. 236, 240 (Bankr. 9th Cir. 1985) ('[A] driver who [voluntarily] ingests an intoxicating substance should be subject to a claim of nondischargeability under 11 U.S.C. § 523(a)(6)')."

Judge Anderson thereupon conducted an exhaustive examination of the legislative history of section 523(a)(9). He concluded as follows:

"As we previously stated, the plain language of a statute should be regarded as conclusive absent a 'clearly expressed legislative intention' to the contrary. There is nothing in the legislative history of 11 U.S. C. § 523(a)(9) which reveals that Congress intended the § 523(a)(9) exception to discharge to apply to post-petition judgments. Indeed, all discussion in the legislative history is specifically directed at persons or families who have been the victims of drunk drivers *losing their judgments* by reason of the debtor's subsequent bankruptcy petition. If Congress had wished to extend the coverage of § 523(a)(9) to encompass post-petition judgments, it could have easily made clear its intention to do so. As the Supreme Court has observed:

When even after [going behind the plain language of a statute in search of a possibly contrary congressional intent] nothing in the legislative history remotely suggests a congressional intent contrary to Congress' chosen words ... any further steps take the courts out of the realm of interpretation and place them in the domain of legislation.

*United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). [I] decline the invitation, evidently accepted by the lower courts, to assume a legislative role and rewrite the statute.

"It has also been argued that a literal interpretation of the plain language of the statute would render § 523(a)(9) meaningless. [I] find this argument unpersuasive. The fallacy of this argument is premised on the supposition that every potential drunk driving defendant, assuming insolvent, will flee to the bankruptcy court prior to the entry of an unfavorable judgment and have the creditor's claim discharged. This beguiling assumption ignores the fact that defendants may have other interests or concerns which would mitigate against filing a petition in bankruptcy. Indeed, based upon the dire consequence envisioned by those who would view a literal reading of § 523(a)(9) as rendering the statute nugatory, one would expect never to see a judgment entered prior to the commencement of the debtor's bankruptcy. Such is not the case. The statute on the contrary appears to be functioning as contemplated by Congress. *See, e.g., In the Matter of Brunson*, 82 B.R. 634 (Bankr.S. D.Ga.1988) (prepetition default judgment nondischargeable); *In re Bennett*, 80 B.R. 800 (Bankr.E.D.Va.1988) (prepetition default judgment nondischargeable); *In re Christiansen*, 80 B.R. 481 (W.D.Mo.1987)

(prepetition judgment obtained but remanded to bankruptcy court for causation determination); *In re Keating,* 80 B.R. 115 (Bankr.E.D.Wis.1987) (prepetition default judgment nondischargeable); *In re Pahule,* 78 B.R. 210 (E.D.Wis.1987) (prepetition judgment nondischargeable); *In re Gomez,* 70 B.R. 96 (Bankr.S.D.Fla.1987) (prepetition judgment nondischargeable); *In re Lewis,* 69 B.R. 600 (Bankr.S.D.Fla.1987) (prepetition judgment nondischargeable); *Dougherty v. Brackett,* 51 B.R. 987 (Bankr.D.Color.1985) (prepetition guilty plea, restitution order, and promissory note constitute nondischargeable consent decree); *In re Coupe,* 51 B.R. 939 (Bankr.N.D.Ohio 1985) (prepetition judgment obtained but debt dischargeable due to insufficient evidence of intoxication); *In re Cunningham,* 48 B.R. 641 (Bankr.W.D.Tenn.1985) (prepetition judgment nondischargeable).

"That [my] interpretation of § 523(a)(9) could, at times, admittedly result in a 'race' to the courthouse does not alter [my] determination. Such a 'race' has always existed insofar as a Chapter 13 bankruptcy is concerned. In contrast to provisions involving Chapter 7 debtors, the language of 11 U.S.C. § 109(e) is drafted explicitly to require that a Chapter 13 debtor 'owe[ ] ... debts' on the date the petition is filed. However, while some debts must be owed, the debtor cannot owe debts in too large an amount and still expect to take advantage of the streamlined rehabilitative provisions provided in Chapter 13. The debtor must owe less than $100,000 in liquidated unsecured debts at the time the petition is filed. Thus, it is certainly incumbent upon a drunk driving debtor to 'race' to the courthouse and file a Chapter 13 petition before a liquidated debt arising from a tort judgment is created. [Footnote omitted].

"Moreover, a debtor and his counsel may have deep-seated feelings that the debtor has strong and meritorious defenses that would defeat the stigma of a DWI civil judgment. He would prefer to defend rather than 'race' to the courthouse and also incur the stigma of bankruptcy. To make such a choice would not be malpractice as suggested by the bankruptcy court in *In re Ganzer,* 54 B.R. at 76–77.

"[I am] aware that [my] application of the plain language of § 523(a)(9) may occasionally lead to objectionable consequences for those injured by the deplorable and irresponsible actions of drunk drivers. This, however, is not a sufficient basis for ignoring clear statutory language.

[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do. 'There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.' ... Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result.

*United States v. Locke,* 471 U.S. at 95, 105 S.Ct. at 1793 (citations omitted). Under the circumstances, we are obligated to apply the 'to the extent that such debt arises from a judgment or consent decree' language by its terms.

## "II.

"Appellants also contend that a finding of nondischargeability of their claim is warranted on the basis of their April 24, 1986 answer to Hudson's complaint of March 24, 1986 to determine dischargeability. While not specifically alluding to § 523(a)(6) in their answer, appellants contend that its reference to § 523(a)(9) and *In re Adams* sufficiently established that they were alternatively requesting a declaration of nondischargeability under § 523(a)(6). [Footnote omitted].

"Whatever the merits of appellants' contention that their answer to Hudson's complaint adequately requested a determination of nondischargeability on the basis of § 523(a)(6), [I would] hold that they failed to do so in a timely fashion in accordance with the requirements of Bankr.R. 4007(c).

"11 U.S.C. § 523(c) requires creditors to take affirmative steps should they seek to except certain debts from discharge.

Where debts which are of a type defined in subsections (2), (4), and (6) of § 523(a) are concerned, '[i]f the creditor does not act, the debt is discharged.' H.R.Rep. No. 595, 95th Cong.2d Sess. 342, 365 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6321; *see also In re Hill*, 811 F.2d 484, 486 (9th Cir.1987). While Bankr.R. 4007(b) does not contain a time limit for the filing of an adversary complaint to determine the dischargeability of a debt specified in § 523(a)(9), Bankr.R. 4007(c) imposes a deadline for filing complaints to determine the dischargeability of a debt set out in § 523(a)(6). Rule 4007(c) mandates that such complaint must be filed within 60 days of the § 341(a) meeting of creditors or upon an extension date set by the court.

"Here, the deadline to file a complaint to determine dischargeability was April 7, 1986. Hudson filed his complaint to determine the dischargeability of appellants' claim under § 523(a)(9) on March 24, 1986. Appellants subsequently filed an answer on April 24, 1986, within the time period allowed for an answer, *see* Bankr.R. 7012, but not within the time period for filing a complaint under § 523(c). While an answer may take the form of a complaint to determine dischargeability, *see In re Thomas*, 47 B.R. 27 (Bankr.S.D.Cal.1984), it does not excuse the 60–day limit for requesting relief under § 523(a)(2), (4), or (6). Furthermore, while the court has discretion to extend the 60–day filing period of Bankr.R. 4007(c), such discretion is only authorized if a motion seeking such relief is brought before the end of the original period. Bankr.R. 4007(c), 9006(b)(3). Here, appellants filed no such motion. Accordingly, [I believe that] appellants' cause of action based upon § 523(a)(6) was appropriately dismissed for a failure to file a timely complaint.

## "CONCLUSION

"[I would hold that] appellants are precluded from a nondischargeability determination of their claim by their failure to

obtain a judgment against Hudson prior to his petition in Chapter 7 bankruptcy, and by their failure to file a timely request for relief within the deadline established by Bankr.R. 4007(c). The plain wording of 11 U.S.C. § 523(a)(9), its legislative history, and other relevant portions of the Bankruptcy Code combine to persuade [me] that § 523(a)(9) is inapplicable where the party seeking relief has not obtained a judgment or consent decree prior to the initiation of bankruptcy proceedings by the debtor. Had appellants filed a timely request for relief under § 523(a)(6), they may have sustained the complaint for nondischargeability of their drunk driving claim. That they failed to do so is unfortunate. Filing deadlines, like statutes of limitations, by their very nature often operate harshly with respect to individuals irrespective of how justifiable or meritorious their particular claim may be."

For all of the reasons stated by Judge ANDERSON, I respectfully dissent.