In re Timothy J. TYLER, Debtor.

Ralph A. BURCH, Jr., Plaintiff,

v.

Timothy J. TYLER, Defendant.

Bankruptcy No. 87 B 15126.
Adv. No. 88 A 34.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 31, 1989.

Edward Scoby, Reed, Scoby & Trainor, Ltd., Chicago, Ill., for plaintiff.

Erica Crohn Minchella, Shimberg, Crohn & Minchella, Chtd., Chicago, Ill., for debtor-defendant.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

Plaintiff, Ralph A. Burch, Jr., seeks to have his claim against Timothy J. Tyler, debtor, defendant, found not dischargeable on the grounds that Tyler caused Burch injury to himself and his property as a result of Tyler's operation of a motor vehicle while intoxicated. [Bankruptcy Code §§ 523(a)(6) and (9)]. The court is of the opinion that this debt is not discharged under the provisions of Code § 523(a)(9).

■ The facts of this case are particularly egregious. On December 10, 1977 Burch was severely injured when struck by a car that Tyler was driving. At approximately 1:00 a.m., Burch's van became disabled while heading in an eastbound direction on Archer Avenue, Chicago, Illinois. Burch had parked his van in the left or inner lane of the two eastbound lanes of Archer Avenue, some three blocks east of Cicero Avenue, leaving his hazard lights on.

Wilburt Abron who was proceeding eastbound on Archer Avenue noticed Burch walking along the south side of Archer Avenue and inquired if Burch needed assistance. When Abron was told that Burch had run out of gas Abron offered to take Burch to a nearby service station. After obtaining some gas for Burch's van, he and Abron drove back to where Burch had left the van. Abron parked his car, with its hazard lights on, directly in front of Burch's van. Burch and Abron were pouring gasoline into the gas tank of the van when Burch was struck by the vehicle driven by Tyler. Burch was directly behind the van. Tyler does not dispute the fact that he in fact drove into Burch thereby causing him to sustain injuries.

At the time of the accident traffic was light on Archer Avenue, the weather clear, and the pavement recently plowed of snow. Immediately preceding the accident Tyler had attended a bachelor party at a Shera-

ton Hotel on Cicero Avenue, Chicago, Illinois, approximately six blocks from the site of the accident. Tyler arrived at the party at approximately 10:00 p.m. and is not sure when he left. While there he tended bar, though he was not hired to do so. Tyler remembers having had approximately four beers. Tyler last consumed any food at 9:00 p.m.

After leaving the party, Tyler drove along Cicero to Archer Avenue and there turned eastward. He traveled eastward in the left lane of the two eastbound lanes. Tyler asserts that he was traveling at only 35 m.p.h. Eyewitnesses testified that his speed immediately preceding impact was approximately 45 m.p.h. Tyler recalls seeing the stalled van before he drove into it but does not remember trying to stop his car. According to two eyewitnesses who were heading westbound on Archer Avenue at the time of the accident, although there were no other vehicles heading east on Archer Avenue, Tyler's vehicle simply sped right into the back of Burch's stalled van hitting Burch who was standing there. Tyler made no attempt to stop or change lanes in order to avoid Burch even though there were no other cars in the outer eastbound lane.

After impact, Tyler began to back up his car at which point the eyewitnesses drove their car across Archer Avenue and behind Tyler's vehicle parking in a perpendicular position to the road so as to prevent Tyler from leaving the scene of the accident. Tyler was not injured, but Burch suffered amputation of both legs and all ten fingers.

According to the eyewitnesses who attempted to assist the parties after the accident, Tyler spoke in an incoherent fashion; his speech was slurred; his vision, unfocused; and his body movements, uncoordinated. In addition, Tyler had a distinct odor of alcohol. Tyler did not appear to be fully cognizant of what had just occurred.

Tyler admits, as has been noted, that he caused the injury to Burch but denies that he was legally intoxicated. It appears that no blood-alcohol test was taken of Tyler after the accident to determine the amount of alcohol in his bloodstream. The court finds and concludes that the injury to Burch is a liability of Tyler incurred as a result of his operation of a motor vehicle while legally intoxicated.

█ However, the court's inquiry does not end here. Confusion has arisen as to the interpretation of the provisions of Code § 523(a)(9) that exempt from discharge a debt to the extent that such debt arises from a judgment or consent decree entered in a court of record against a debtor wherein liability incurred by such debtor as a result of his operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred. As noted in *In re Rose*, 86 B.R. 86, 88 (Bkrtcy.E. D.Mich.1988):

> Section 523(a)(9) was written in such a way as to create much consternation among the bankruptcy courts. The plaintiffs argued that it was added by Congress in 1984 to exempt from discharge debts arising from the debtor's operation of a motor vehicle while legally intoxicated. Prior thereto, while many cases held to the contrary, a substantial number of cases held that claims arising from injuries caused by a drunk driver could be discharged in the drunk driver's bankruptcy because driving drunk was not "willful and malicious" for purposes of § 523(a)(6) or its Bankruptcy Act predecessor, former 11 U.S.C. § 17(a)(8). In response to this split of authority, Congress enacted § 523(a)(9) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353) (BAFJA). Congress' infelicitous choice of words has created a legitimate debate over its intent.

This court suggests that the infelicitous choice of words in Code § 523(a)(9) came about because of the modification by BAFJA draftsmen of Senator Danforth's bill, S. 2159, introduced in 1982 to amend subsection 523(a) of the Bankruptcy Code by adding a subsection (e) to provide that injuries resulting from a liability which is based on driving while intoxicated were to be

398

deemed willful and malicious and were not to be discharged under Code § 523(a)(6). Senate bill 2159 provided:

Any injury resulting in a judgment based upon liability of the debtor where, in connection with such liability such debtor was found to have operated a motor vehicle while legally intoxicated shall be deemed to be a willful and malicious injury for purposes of subsection (a)(6) of this section.

This amendment would have given a broader meaning to willful and malicious and would have provided that those injured by a drunk driver could have had a judgment entered in the bankruptcy court declaring that a debt based on such conduct was nondischargeable. This amendment did not contemplate a judgment entered prior to a filing. Indeed, such legislation would have, as other courts have noted, caused a race to the bankruptcy court, such as in the case at bar. Here, Tyler did race to the bankruptcy court for he filed his bankruptcy petition shortly after the Circuit Court of Cook County had assigned a trial date to the civil action that Burch had brought against Tyler.

Senator Danforth's bill was not then enacted for Congress held up consideration of this bill in order to take up the problem caused by the Supreme Court's determination in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that Congress had improvidently granted bankruptcy judges jurisdiction in violation of Article III of the Constitution. Congress did include a provision whereby bankruptcy courts could find drunk drivers' debts nondischargeable in the Bankruptcy Amendments and Federal Judge Act of 1984 (P.L. 98–353) that set up our present bankruptcy court system. Unfortunately, the BAFJA draftsmen thought better of Senator Danforth's language and substituted a new subsection, Code § 523(a)(9), providing that a discharge does not discharge an individual from any debt

to any entity to the extent that such debt arises from a judgment or consent decree entered in a court of record against a debtor wherein liability was incurred by

such debtor as a result of the debtor's operation of a motor vehicle while illegally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within such liability was incurred.

The changes adopted have caused this "debate" over Congress's intent in enacting Code § 523(a)(9). However, if we recognize that Congress wanted to have the bankruptcy court as the keystone to the determination of nondischargeability of a drunk driver's debt, we readily see that "judgment or consent decree" in Code § 523(a)(9) includes the bankruptcy courts' judgments as originally contemplated by Senator Danforth as well as judgments or consent decrees from other courts. Why then the language that includes judgments or consent decrees in other courts? We can only surmise that the change in language from Senator Danforth's proposed amendment to the present enactment was because the BAFJA draftsmen wanted Congress to give bankruptcy courts the power and authority to use the doctrine of res judicata as well as that of collateral estoppel to determine liability where the injuries were caused by drunk drivers. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1978). Senator Danforth's amendment could have been restrictively construed so as to have precluded a bankruptcy court from using the doctrine of collateral estoppel as well as that of res judicata to dispose of such adversary proceedings.

This court is satisfied that Code § 523(a)(9) authorizes a bankruptcy court to determine from the facts before it whether a debt arising from a debtor's drunken driving is dischargeable and in so doing may arrive at its judgment from consideration of evidence submitted to it or by the application of the doctrines of res judicata or collateral estoppel.

Therefore, the court finds and concludes that the debt of Tyler to Burch is not discharged in Tyler's bankruptcy proceedings for it is a debt wherein liability was incurred by Tyler as a result of his operation of a motor vehicle while illegally intoxicated. Because only the issue of dis-

chargeability was brought to this court, we shall lift the stay to permit Burch to seek damages in the Circuit Court proceeding, case no. 77 L 24396.

The court is appreciative of the opinions in *In re Hudson*, 859 F.2d 1418 (9th Cir. 1988); *In the Matter of Pahule*, 849 F.2d 1056 (7th Cir.1988); *In re Rose*, 86 B.R. 86 (Bkrtcy.E.D.Mich.1988); *In re Hudson*, 73 B.R. 649 (9th Cir. BAP 1987); and *In re Thomas*, 51 B.R. 187 (Bkrtcy.E.D.Va.1985) because they gave this court direction to make the analysis that Congress did intend, and the provisions of the code by clear and unambiguous language do provide, that bankruptcy courts may enter judgments that debts of a drunk driver for injuries to his victims are nondischargeable.

It is therefore ordered that judgment is entered in favor of Ralph A. Burch, Jr., plaintiff, and against Timothy J. Tyler, debtor, defendant. Any indebtedness owed Ralph A. Burch, Jr., by Timothy J. Tyler, debtor, is not discharged in these proceedings. Stay is terminated to permit Ralph A. Burch, Jr., to proceed in the action that he filed against Timothy J. Tyler in the Circuit Court of Cook County, Illinois, case no. 77 L 24396.